41 F.3d 1162
 96 Ed. Law Rep. 90, 8 A.D.D. 300
 BOARD OF EDUCATION OF MURPHYSBORO COMMUNITY UNIT SCHOOL
DISTRICT NO. 186, County of Jackson, State of
Illinois, Plaintiff-Appellant,
v.
ILLINOIS STATE BOARD OF EDUCATION, G.S., the parent and the
next friend of the Minor M.S., P.S., the parent
and next friend of the Minor M.S., et
al., Defendants-Appellees.
 No. 94-1784.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 24, 1994.
Decided Dec. 5, 1994.
 
 1
 Heidi A. Katz, Mary K. Klimesh, Merry C. Rhoades (argued), Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Carbondale, IL, for Bd. of Educ. of Murphysboro Community Unit School Dist. No. 186.
 
 
 2
 Susan Frederick Rhodes, Asst. Atty. Gen., Office of the Atty. Gen., Chicago, IL, Alix E. Armstead, Office of the Atty. Gen., Springfield, IL, for Ill. State Bd. of Educ.
 
 
 3
 Katherine M. Black (argued), Carbondale, IL, for G.S., P.S., and M.S.
 
 
 4
 Before POSNER, Chief Judge, BAUER, Circuit Judge, and WILL, District Judge.*
 
 
 5
 WILL, District Judge.
 
 
 6
 On review from state agency proceedings, the district court found that the Murphysboro School District No. 186 ("school district") failed to provide Marjorie S. with an appropriate education as required by the Individuals with Disabilities Education Act ("IDEA"), 28 U.S.C. Sec. 1400 et seq. Having found that the school district's proposed independent educational program ("IEP") did not meet the requirements of the IDEA, the court ordered placement at the only other proposed alternative, St. Coletta, an out-of-state residential school which Marjorie had attended during the previous school year. The district court also ordered the school district to reimburse Marjorie's parents for several expenses, including tuition at St. Coletta and two independent educational evaluations. The school district now appeals. We affirm the district court's decision that Marjorie should be placed at St. Coletta and that the school district should reimburse her parents for the cost of tuition and the 1991 summer evaluation, but remand for further consideration the issue of whether the school district should reimburse the costs of the 1992 summer evaluation.
 
 BACKGROUND
 
 7
 Marjorie S. is a minor residing in the Murphysboro School District. Marjorie is mentally retarded, speech and language impaired, and possibly autistic. From 1986 to 1991, she attended classes at the Tri-County Center, a facility for disabled children. Pursuant to the IDEA and Illinois School Code, every year the school district convened a multidisciplinary conference ("MDC") and IEP meeting to assess Marjorie's educational needs. Marjorie's parents attended each of these meetings.
 
 
 8
 For the first few years of Marjorie's education, her parents agreed with the IEPs proposed by the school district. However, starting in 1989, her parents and the school district began to disagree on the best way to educate Marjorie. The school district suggested that Marjorie be placed in a program entitled "CHOICES." The CHOICES program is an educational program designed to promote interaction between disabled and non-disabled students. The school district advocated the CHOICES program for Marjorie because they thought that interaction with non-disabled students would allow her to develop good modeling habits. Marjorie's parents, who were concerned that her language skills were regressing, indicated that modeling was not a primary objective at that time. Due to their objections, Marjorie remained at the Tri-County Center.
 
 
 9
 In 1991, the school district conducted a triennial reevaluation of Marjorie. At this meeting, the school district determined that she remained eligible for special education services and recommended full-day special education in a program for moderate-to-severe mentally impaired students, 60-90 minutes of speech therapy per week, and summer school. All members of the IEP team except Marjorie's parents agreed that she should be placed in the CHOICES program. As an alternative to the CHOICES program, Marjorie's parents requested that she be placed at St. Coletta, a private residential school located in Wisconsin. They believed that the around-the-clock learning schedule would improve her communication and toileting skills. The school personnel disagreed with this request.
 
 
 10
 After this meeting, Marjorie's parents requested a Level I due process hearing in order to determine appropriate placement for Marjorie. In the meantime, her parents withdrew Marjorie from the Tri-County Center's 1991 summer program and enrolled her in a private pre-school language program for an independent evaluation. This program was conducted by Dr. Kenneth Ruder, who had evaluated Marjorie previously in 1989.
 
 
 11
 The Level I hearing officer found that the school district's IEP did not meet the requirements of the IDEA. Nevertheless, he did not resolve the placement issue. Instead, the officer ordered the school district to convene a MDC/IEP meeting within 10 days in order to revise certain parts of the IEP and revisit the placement issue. He also directed the school district to pay one-fourth of the bill for Dr. Ruder's 1991 evaluation.
 
 
 12
 In September 1991, the school district held the MDC/IEP meeting and revised Marjorie's IEP. Marjorie's parents did not find these revisions satisfactory and once again proposed placement at St. Coletta. The school district continued to reject residential placement as too restrictive, adhering to their original position that she would benefit from interaction with non-disabled peers.
 
 
 13
 The parties then cross-appealed the Level I decision. The Level II reviewing officer issued an order directing that Marjorie be placed at St. Coletta and that the district reimburse Marjorie's parents for the full cost of Dr. Ruder's summer 1991 evaluation. The school district then appealed to the district court pursuant to 20 U.S.C. Sec. 1415(e)(2). In the meantime, Marjorie's parents withdrew her from public school. She received a home education during the 1991-92 school year. Marjorie was again evaluated by Dr. Ruder during the summer of 1992 and was enrolled at St. Coletta during the 1992-93 school year.
 
 
 14
 After a bench trial, the district court held against the school district. In its findings of fact and conclusions of law, the district court found that, based on the evidence presented at the trial, the court had only two options, i.e., schooling at St. Coletta or the education proposed in the September 1991 IEP. The court noted that the Level I hearing officer had found that the May 1991 IEP did not meet the requirements of the IDEA and the Level II officer found that there were no significant differences between the September 1991 IEP and the May 1991 IEP. Thus, the Level II officer had concluded that both IEPs failed to provide an appropriate education. The court agreed, and noted that the district had not presented any evidence at the trial that had not already been presented to the Level II hearing officer, although some evidence had been expanded or supplemented. Finding that the school district had not proved by the preponderance of the evidence that its September 1991 IEP met the requirements of the IDEA, the court considered the only alternative presented at trial--residential placement at St. Coletta.
 
 
 15
 The court concluded that, although it did not believe that St. Coletta was the only educational program that could meet Marjorie's needs, St. Coletta would provide an appropriate education for Marjorie. Therefore, the court ordered that Marjorie stay at St. Coletta. The court also ordered reimbursement for the previous year's tuition and Dr. Ruder's 1991 and 1992 summer evaluations.
 
 DISCUSSION
 A. Placement at St. Coletta
 
 16
 To meet the requirements of the IDEA and the parallel provisions of the Illinois School Code, a school district must provide each disabled student with a free appropriate public education tailored to his or her individual needs. 20 U.S.C. Secs. 1400(c), 1414(a)(5); 105 ILCS 5/14-8.02 (1992). A free appropriate public education is one "specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." See Board of Educ. v. Rowley, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 3042, 73 L.Ed.2d 690 (1982).
 
 
 17
 To comply with the requirements of the IDEA, a school district must follow the procedures set forth in the Act and develop an IEP through those procedures that is reasonably calculated to enable the child to receive educational benefits. Rowley, 458 U.S. at 206-07, 102 S.Ct. at 3050-51. Once the school district has met these two requirements, the courts cannot require more; the purpose of the IDEA is to "open the door of public education" to handicapped children, not to educate a handicapped child to her highest potential. Board of Educ. of Sch. Dist. No. 21 v. Ill. St. Bd. of Educ., 938 F.2d 712, 715 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992).
 
 
 18
 The standard of review of administrative agency decisions under the IDEA is provided by 20 U.S.C. Sec. 1415(e)(2):
 
 
 19
 In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.
 
 
 20
 Thus, a district court must independently determine whether the requirements of the Act have been satisfied. In developing this standard, Congress specifically rejected language which would have made state administrative findings conclusive if supported by substantial evidence. See Rowley, 458 U.S. at 205, 102 S.Ct. at 3050. However, because courts do not have special expertise in the area of educational policy, they must give "due weight" to the results of the administrative decisions and should not substitute "their own notions of sound educational policy for those of the school authorities which they review." Id. at 206, 102 S.Ct. at 3051.
 
 
 21
 Whether a school district has provided a free appropriate public education is a mixed question of law and fact which we review de novo. Sch. Dist. No. 21, 938 F.2d at 715. In the absence of a mistake of law, we review the district court's decision for clear error. Id. at 716. On appeal, the school district bears the burden of proof as the party challenging the outcome of the state administrative hearings. Id.
 
 
 22
 The parties do not dispute that the school district complied with the procedural aspects of the Act. Therefore, on appeal we are faced solely with the issue of whether the IEP developed through those procedures was reasonably calculated to provide Marjorie with educational benefits. The school district contends that, for several reasons, the district court erred in determining that the IEP was not reasonably calculated to provide Marjorie with educational benefits.
 
 
 23
 First, the school district argues that the district court erred by giving undue deference to the decisions of the Level I and Level II hearing officers. As discussed above, in an IDEA case a district court does not utilize the substantial evidence standard which is typically used when reviewing an agency's decision, but instead must decide independently whether the requirements of the IDEA are met. In doing so, however, the court must give "due weight" to the decisions of the agency officers. "Due weight" necessarily implies some sort of deference to the agency's decision, and considering the officer's special expertise in education law, we think a sound basis exists for giving deference to the decisions of the hearing officers.
 
 
 24
 The school district argues that the district court was required to give deference to the educators, not the agency officers. Certainly, the district court should have considered the evidence presented by the school district during the agency proceedings and at trial before the court. However, as the district court noted, giving deference to the educators who testified on behalf of the school district would require the court to place Marjorie in the program developed by the school district, despite the fact that the hearing officers considered the IEPs inappropriate, as did other expert witnesses. In addition, requiring a court to defer to the educator's decisions would make it very difficult for parents to prevail in situations where they disagreed with the educator's IEP, which is not a result contemplated by the IDEA.
 
 
 25
 Here, the district court did not use the substantial evidence standard, but instead carefully examined the record from the administrative proceedings, looked at the exhibits, and considered the additional evidence presented at trial. The district court independently evaluated the evidence in this case, but, recognizing its lack of expertise in matters of educational methodology, the court gave deference to the hearing officers who had considered the case previously and the experts who testified before it. The district court did not err by using this standard to evaluate the evidence.
 
 
 26
 The school district also maintains that the district court's decision was in clear error because it was not supported by the preponderance of the evidence. Specifically, the school district contends that the September IEP met the minimum requirements of the IDEA. The school district argues that the revised IEP was designed to respond to the inadequacies of the first IEP and that it "provided an intense and carefully crafted educational program for Marjorie's educational needs." Most notably, the new IEP increased the speech training from 60-90 minutes a week to 225 minutes a week and required a teacher-student ratio of 1:3. Without a doubt, the IEP suggested by the school district incorporated some changes. However, the district court was persuaded by the findings of the hearing officers and other experts that the CHOICES program developed by the school district did not provide an appropriate education for Marjorie. The district court reviewed the entire record and heard direct testimony from the experts on both sides in this case. Its judgment on this issue is supported by a preponderance of the evidence.
 
 
 27
 The school district next asserts that Marjorie is not entitled to the education "best" suited to her and her parent's needs, and the district court erred by ordering an education which exceeds the requirements of the IDEA. However, as the district court found, the school district failed to present an IEP which met the minimum requirements of the IDEA and failed to suggest any alternative to its program which did meet those minimums. Therefore, the district court had no choice but to order that Marjorie be educated at St. Coletta. The district court was of the opinion that other alternatives to St. Coletta probably existed, but given the two choices presented to it, St. Coletta was the only viable option.
 
 
 28
 For the same reason, the district court could not, as the school district argues, reject St. Coletta because it does not provide the least restrictive environment ("LRE") because it fails to comply with the IDEA's mainstreaming requirements. Under the IDEA, children with disabilities must be mainstreamed with non-disabled peers to the extent possible. However, the mainstreaming requirement was developed in response to school districts which were reluctant to integrate mentally impaired children and their non-disabled peers. It was not developed to promote integration with non-disabled peers at the expense of other IDEA educational requirements and is applicable only if the IEP meets IDEA minimums.
 
 
 29
 In addition, mainstreaming decisions are made on an individual basis by examining the nature of the child's handicap, needs, and abilities. See Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036 (5th Cir.1989). In implementing the LRE mandate, each school district must maintain a continuum of program options which range from regular classrooms with supplementary aids to separate schools and residential facilities. See 34 C.F.R. 300.551(b)(1). Thus, the regulations contemplate that mainstreaming is not required in every case. See also Briggs v. Bd. of Educ., 882 F.2d 688 (2d Cir.1989); Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983).
 
 
 30
 Here, the evidence demonstrated that the educational plan proposed by the school district was inadequate, despite the school district's admirable goal of allowing Marjorie to interact with non-disabled students. Since the school district's CHOICES program did not provide Marjorie with the minimum educational opportunities required by the IDEA, the court could not consider whether the CHOICES program was better suited to mainstreaming efforts. Further, because the school district did not present alternatives to its September IEP, the district court was not able to decide whether St. Coletta was the least restrictive alternative--as it turned out, St. Coletta was the only alternative, and the district court made it clear that this situation resulted directly from the school district's failure to present a viable alternative. Since the court was presented with only one option, it was not required to locate another school that would satisfy the least restrictive alternative requirement based on the entire pool of schools available, but rather was required simply to determine whether that one available choice would provide an appropriate education for Marjorie. See Union Sch. Dist. v. Smith, 15 F.3d 1519, 1526 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 428, 130 L.Ed.2d 341 (1994) (school district must reimburse parents for unilateral placement if school is "appropriate alternative educational program.")
 
 
 31
 As of oral argument, Marjorie was still enrolled at St. Coletta. The school district admitted that they had not developed an IEP since September 1991, in large part they contended because the hearing officers and district court had not provided specific guidelines for developing an IEP which would meet the requirements of the IDEA. At oral argument, they urged us to develop such guidelines, but we decline the offer. Like the district court, we are not experts in educational policy. Further, each disabled child has special educational needs which must be examined on a case-by-case basis. Finally, the evidence presented in this case indicates that, despite their best efforts to provide an education for Marjorie, the school district may not have the facilities to educate her within the district.
 
 
 32
 The district court properly applied the law in this case. Therefore, we review for clear error the court's determination that the school district's IEP did not provide a free appropriate public education. The district court's decision was well-supported by the record. Because its decision was not in clear error, we affirm the court's decision on this issue.B. Reimbursement for Dr. Ruder's summer programs
 
 
 33
 Without giving any reasons for its conclusion, the district court ordered the school district to reimburse Marjorie's parents for the costs of the 1991 and 1992 summer evaluations performed by Dr. Ruder. The school district claims that while, under some circumstances, 34 C.F.R. Sec. 300.503 grants parents the right to reimbursement for privately obtained evaluations, Marjorie's parents were not entitled to reimbursement and, if they were entitled originally, they are not now because they failed to follow the proper procedure for reimbursement, as required under state law. Thus, the school district contends that the district court erroneously ordered reimbursement for these evaluations.
 
 
 34
 Marjorie's parents had the right to an independent educational evaluation performed at public expense if they disagreed with an evaluation performed by the school district. See 34 C.F.R. Sec. 300.503; Evans v. District No. 17 of Douglas County, 841 F.2d 824, 830 (8th Cir.1988); Hudson v. Wilson, 828 F.2d 1059, 1065 (4th Cir.1987). According to the court in Hudson, parents can initiate an evaluation before notifying a school district that they disagree with the district's evaluation. Once the parents obtain a private evaluation, the regulations provide that the school district can later challenge the private testing at a due process hearing. Only if the hearing officer finds that the school district's initial evaluation was appropriate, will the parents not be reimbursed. See Hudson, 828 F.2d at 1065.
 
 
 35
 Here, Marjorie's parents disagreed with the school district's May 1991 triennial reevaluation of Marjorie. Therefore, they were entitled to an independent evaluation of Marjorie at public expense, which Dr. Ruder performed during the summer of 1991. The school district could have contested this independent evaluation, claiming that its own evaluation was correct, but it did not. Therefore, as the district court found, Marjorie's parents should be reimbursed for Dr. Ruder's summer 1991 evaluation.
 
 
 36
 However, as the court in Hudson noted, section 300.503(b) limits reimbursement to a single evaluation. 828 F.2d at 1065-66. Thus, parents may be reimbursed for only one publicly funded evaluation for each school district evaluation with which the parents disagree. See EHLR Supp. 252(CRR) 213:259-63 (Nov. 3, 1989). Although the parents disagreed with the MDC/IEP conducted in September 1991, it is unclear whether this was an evaluation as contemplated by the regulations. See 34 C.F.R. Sec. 300.534(b) (providing for reevaluations every three years, or more often if the conditions require). Because we cannot ascertain the basis for the district court's order requiring the school district to reimburse Marjorie's parents for the 1992 summer evaluation, we remand for further consideration of this issue.
 
 C. Attorney's fees and costs
 
 37
 The school district requests that if we find that the district court was in error, we should reverse the award of attorney's fees and costs because the parents would no longer be prevailing parties. On remand, the district court might find in favor of the school district on the issue of reimbursement for the 1992 summer evaluation expenses. Regardless of the ultimate disposition of that issue, however, because we affirm the majority of the district court's decision, we conclude that Marjorie's parents are prevailing parties. As prevailing parties, they are entitled to attorney's fees and costs.
 
 CONCLUSION
 
 38
 For the reasons stated above, we affirm the district court's decision that the school district did not provide an appropriate free education under the IDEA and that the school district must reimburse Marjorie's parents for the 1991 independent evaluation. We remand for further consideration the district court's decision that Marjorie's parents were entitled to reimbursement for the 1992 independent evaluation.
 
 
 
 *
 The Honorable Hubert L. Will, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation