MONTICELLO SCHOOL DISTRICT NO. 25, Plaintiff and Counter–Defendant–Appellee,

v.

GEORGE L. and Carolyn L., on behalf of BROCK L., a Minor, Defendants and Counter–Plaintiffs–Appellants.

No. 96–1765.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1996

Decided Dec. 16, 1996.

---

Larry D. Kuster (argued), Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, Jacksonville, IL, for Plaintiff and Counter–Defendant–Appellee.

Katherine M. Black (argued), Carbondale, IL, for Defendants and Counter–Plaintiffs–Apellants.

Before CUMMINGS, ESCHBACH and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

On March 15, 1995, the plaintiff and counter-defendant Monticello School District No. 25 (the "School District") filed a complaint to vacate the Level II hearing officer's decision of November 21, 1994. That decision approved a Level I hearing officer's finding that the School District's Individualized Education Program ("IEP–1"), developed February 23, 1994, for Brock L., a student with Attention Deficit Hyperactivity Disorder ("ADHD"), did not provide him with a "free appropriate public education" ("FAPE") within the meaning of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"). Consequently, both the Level I and Level II hearing officers found that the School District was required to reimburse Brock's parents, George L. and Carolyn L. (the "Parents"), for their unilateral placement of Brock in a private school from March 1994, when such placement was made, until the semester following the Level I hearing officer's decision requiring modifications to the IEP–1 to eliminate its deficiencies. Defendants and counter-plaintiffs the Parents counterclaimed alleging that the hearing officers had erred by applying a faulty legal interpretation of the least restrictive environment ("LRE") requirement under the IDEA. Count I of the counterclaim alleged that the Level I and Level II hearing officer decisions erred by failing to order continued placement of Brock in the private school for the entire 1994–95 school year based on the requirements in the IDEA; Count II sought relief under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., alleging that the School District intentionally failed to provide Brock with the accommodations required under § 504; and Count III sought relief under §§ 1983 and 1988 of the Civil Rights Act of 1871, 42 U.S.C., alleging Brock's constitutional and statutory rights had been violated by the School District's intentional failure to provide him with an appropriate special education program under the IDEA and § 504.

After a hearing on November 6, 1995, the district court entered an order on December 18, 1995, affirming the Level II hearing officer's decision, but denying the Parents' counterclaims. The court agreed with the Level II hearing officer that the IEP–1, as modified by the Level I hearing officer's decision, satisfied the requirements of the IDEA, and it agreed with the Level I and Level II hearing officers' determination that the LRE for Brock was a mainstream public school education, rather than the private school Brock was currently attending. In addition, the court found that the Parents had failed to prove a violation of § 504 or §§ 1983 and 1988 because the IEP–1, as interpreted, complied with the IDEA. Therefore, the district court found no basis for a finding of intentional discrimination against Brock or of an intentional violation of his constitutional rights. In an order dated February 27, 1996, the court (i) clarified that the School District was required to reimburse the Parents for Brock's private school education from March 1994, when he was unilaterally withdrawn from the School District, through only the first semester of the 1994–95 school year (the first semester following the Level I hearing officer's decision requiring modification of the IEP–1), and (ii) denied the Parents attorneys' fees, finding that they were not a "prevailing party" within the meaning of the attorneys' fees provisions of the IDEA.

The Parents appeal the district court's dismissal of their § 504 and §§ 1983 and 1988 claims and its denial of attorneys' fees and

reimbursement for Brock's continued placement in the private school after the first semester of the 1994–95 school year. We affirm.

## I.

Brock was educated in the School District from the time he began attending kindergarten in the 1983–84 school year until the Parents unilaterally removed him from the tenth grade on March 21, 1994. When Brock was in the seventh grade, the School District evaluated him for possible special education services and prepared a case study. A multidisciplinary conference was convened, which reviewed the case study and found him eligible for special education as a student with a specific learning disability. Brock had previously been diagnosed by a family physician during his first grade year as having ADHD. The various parties disagree on the severity of Brock's disability. The School District diagnosed Brock has having a "mild" disability. The Level I hearing officer described Brock's learning disability as "moderate," and the Level II hearing officer found that the Parents had not shown that Brock "is more than mildly or moderately handicapped."

On February 23, 1994, the School District proposed the IEP–1 to the Parents. Shortly thereafter, because Brock was failing or obtaining barely passing grades in most of his courses, the Parents enrolled him at Brehm Preparatory School ("Brehm"), an Illinois-approved residential school for public school placements that educates students who are classified as learning disabled and attention deficit disordered. The Parents then requested a Level I due process hearing to challenge the IEP–1 as failing to provide Brock with a FAPE program under the IDEA.

After a three-day hearing, the Level I hearing officer found that the IEP–1 did not provide a FAPE to Brock, citing the standard set forth in *Board of Education v.*

*Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690. The hearing officer stated that:

> B[rock] did learn and receive some educational benefit in his school district. However, he did so, not because of IEPs that were reasonably calculated to confer benefit, but in spite of IEPs that conferred virtually none. The fact that B[rock] is bright enough to gain some learning in spite of flawed evaluation and placement procedures and inadequate IEPs does not mean he received a FAPE.

Decision of Level I Hearing Officer at 16 (August 4, 1994). Although she believed that Brehm was an appropriate school for Brock, the hearing officer determined that Brehm was not the LRE for him, finding "it hard to explain how a moderately impaired learning disabled student could not be provided with an appropriate education in his home high school." *Id.* at 17. Therefore, she (i) directed the School District to develop an IEP providing individualized learning disabilities resource services in the School District for Brock, and (ii) specified certain other actions that the School District must take relating to Brock's education in the School District, e.g., in-service training of all of Brock's teachers on the educational effects of attention deficit disorders in general and of Brock's ADHD needs in particular. The changes to be made to the IEP–1 were set forth with particularity in the decision.[1] However, the hearing officer believed it was unrealistic to make those modifications to Brock's IEP in the one month remaining before the beginning of the school year, so she found appropriate Brock's continued education at Brehm for the first semester of the 1994–95 school year, with reimbursement to the Parents for that period.

The School District filed an appeal of the Level I hearing officer's decision on August 22, 1994, requesting the Level II hearing officer to reverse the Level I order completely with respect to the inadequacy of the IEP–

---

1. For example, the Level I hearing officer ordered that Brock's new IEP would provide for (i) 225 minutes per week of individualized instruction in a special education setting for learning disabled students with no more than five students per teacher, (ii) 15 minutes per week consultation with each of Brock's teachers for his standard education classes, and (iii) 20 minutes per week consultation with the Parents.

1 and the reimbursement of the Parents for the unilateral placement at Brehm. The School District also challenged certain other aspects of the Level I hearing officer's decision related to the School District's handling of Brock's education. During the pendency of the Level II review, Brock remained at Brehm.

## II.

The Parents first argue that the district court erroneously concluded that the Parents had failed to prove a violation of § 504 of the Rehabilitation Act of 1973 and §§ 1983 and 1988, because they were never afforded an opportunity to present their evidence on those counterclaims and because intentional discrimination is not required to prove a violation under those sections. Second, they challenge the district court's denial of reimbursement for Brock's continued placement in Brehm after the first semester of the 1994–95 school year. Finally, they assert that the district court erred when it concluded that the Parents were not prevailing parties under the IDEA entitled to attorneys' fees. Each argument will be addressed in turn.

## A.

The Parents first claim that the district court erroneously granted judgment to the School District on the Parents' §§ 504 and 1983 claims. In its December 18, 1995, order, the district court found that the Parents had failed to prove a violation of § 504 or §§ 1983 and 1988. It noted that the IEP–1, as interpreted, complied with the IDEA. Therefore, the district court found no basis for a finding of intentional discrimination against Brock or of an intentional violation of his constitutional rights.

### 1.

Following the School District's presentation of testimony regarding its claims on November 6, 1995, the district court stated that it would continue the Parents' case until the court decided the claims set forth in the School District's complaint. No opportunity was afforded the Parents to present testimo-

ny on the § 504 and § 1983 claims after that time and before the court entered its December 18, 1995, order. As a result, the Parents claim that the court did not grant them a full and fair hearing on those claims and thus judgment in favor of the School District was inappropriate.

The IDEA at 20 U.S.C. § 1415(e)(2) provides that any court hearing an IDEA action "shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence shall grant such relief as the court determines is appropriate." The Supreme Court has emphasized that this provision should not be read as "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051. Instead, district courts should give "due weight" to the administrative process proceedings, and "adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Id.;* see also *Board of Education of Murphysboro v. Illinois State Board of Education,* 41 F.3d 1162, 1166–1167 (7th Cir.1994); *Dell v. Board of Education,* 32 F.3d 1053, 1057 (7th Cir.1994); *Lachman v. Illinois State Board of Education,* 852 F.2d 290, 293 (7th Cir.1988), *certiorari denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327.

A district court is not required to allow all evidence proffered by a plaintiff in an IDEA proceeding. This Court agrees with the First Circuit's statement that the determination of whether to allow additional evidence under § 1415(e)(2) "must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." *Town of Burlington v. Department of Education,* 736 F.2d 773, 791 (1st Cir.1984), affirmed, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385; accord: *Susan N. v. Wilson School District,* 70 F.3d 751 (3rd Cir.1995); *Ojai Unified School District v. Jackson,* 4 F.3d 1467 (9th Cir.1993), certiorari denied, —— U.S. ——, 115 S.Ct. 90, 130 L.Ed.2d 41. This Court has

not spoken with specificity on the issue of when a district court must hear testimony at the request of a party in an IDEA proceeding, but we certainly have not mandated that a district court do so every time. The Parents have not asserted that any procedures under the IDEA were not followed in this case. Under the reasoning set forth in *Rowley, Murphysboro, Dell* and *Lachman,* this Court finds that the district court in this case did not abuse its discretion in concluding that, because there had been no procedural infirmaries in the administrative proceedings, there was no reason to question, or allow additional evidence into the record as to, the substantive aspects of the Parents' IDEA claims.

■ Even more critically, the Parents have overlooked one very important point in their invocation of § 1415(e)(2) and the cases thereunder in support of their claim that the district court should have allowed them to introduce additional evidence before finding in favor of the School District on the Parents' §§ 504 and 1983 claims: These claims are not brought under the IDEA, and § 1415(e)(2) is simply inapplicable. The Parents have not invoked § 1415(e)(2) in relation to their IDEA claims, but only to claim that they were not able to present evidence on their §§ 504 and 1983 claims and therefore that the district court improperly dismissed such claims.

Moreover, in their briefs before this Court the Parents have described the evidence that they would have presented to the district court following the November 6, 1995, hearing, and that evidence relates exclusively to the IDEA issues, particularly LRE, in this case. In effect, the Parents are asking this Court to use a section of the IDEA to require the district court to hear additional evidence on their §§ 504 and 1983 claims when they have not given any indication that they have relevant evidence to present regarding those claims! That would be a nonsensical result and a waste of court resources. We see nothing in the case law or the statute that says that a court must hear additional evidence on counterclaims not brought under the IDEA, and refuse to draw that conclusion in this case.

2.

The Parents also assert that the district court misstated the intent that must be proved for § 504 and § 1983 claims—citing the district court's statement that there was no basis for a finding of intentional discrimination—and then erroneously concluded that the Parents had not proven that incorrect standard. The Parents cite several cases from the Supreme Court and this Court holding that, at least in some cases, a "disparate impact" theory was availing under § 504 of the Rehabilitation Act. See *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661; *Carter v. Casa Central,* 849 F.2d 1048 (7th Cir.1988). Similarly, the Parents cite another line of cases finding that § 1983 claims may be obtained based on a claim of reckless or callous indifference, see *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632, or upon a finding that the legal violation was committed pursuant to a "custom" of the school district, see *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611.

**The Section 504 Claim**

The two hearing officers described the School District representatives as genuine in their concern and desire for Brock's best interest, Decision of Level I Hearing Officer at 18, Decision of Level II Hearing Officer at 15 (November 21, 1994), and the district court determined that the School District had not violated Brock's procedural rights under the IDEA. The district court determined that the *Rowley* standard had been met in the administrative hearings. As discussed above, the Parents have challenged the district court's failure to hear their additional evidence, but the only evidence suggested in their brief concerns Brock's current status at Brehm and whether it is the LRE for Brock. They have not suggested that they had evidence supporting a claim of intentional discrimination. In light of the foregoing, the district court's conclusion that the Parents had not proven intentional discrimination, and that § 504 relief was not available on that basis, is fully supported by the evidence presented and presumably available.

As to the Parents' claim that § 504 violations may be predicated upon a showing of disparate impact, the Supreme Court explained in *Alexander v. Choate,* 469 U.S. at 299, 105 S.Ct. at 719, that it was rejecting "the boundless notion that all disparate-impact showings constitute prima-facie cases under § 504...." See also *McWright v. Alexander,* 982 F.2d 222, 228 (7th Cir.1992). The question regarding when a federal grantee's action that disparately affects the disabled states a cause of action under § 504 is not comfortably settled by the Supreme Court or this Circuit. For example, in *Alexander v. Choate,* the Supreme Court noted that the elimination of architectural barriers, discriminatory job qualification procedures and denial of "special educational assistance" for children with disabilities were aims of the Rehabilitation Act. 469 U.S. at 297, 105 S.Ct. at 718. This is not a case, however, where the School District attempted to deny Brock special education assistance through some neutral action or policy. The Parents and the School District may have disagreed over the appropriate level of special educational assistance Brock requires, but the School District has never claimed that Brock should have no special assistance, and it was not treating Brock as if he were like any other student. Cf. *Oberti v. Board of Education,* 995 F.2d 1204, 1223–1224 n. 29 (3d Cir.1993) ("[A] determination that a school has violated the affirmative requirements of IDEA by failing to mainstream a child with disabilities to the maximum extent appropriate may not necessarily mean that the school has discriminated 'solely by reason of ... handicap' in violation of § 504.").

Furthermore, it is unclear to this Court that the Parents have attempted to make any showing of a neutral action on the part of the School District that disparately affected Brock. The Parents' complaint alleged only "intentional failure" on the part of the School District. As this Court stated in *Craft v. Board of Trustees,* 793 F.2d 140, 142–143 (7th Cir.1986), *certiorari denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59, parties are bound by the allegations set forth in their complaint, and this Court will not explore a new theory of liability on appeal.[2] As noted above, the Parents have suggested in their briefs before this Court that the only evidence they would have presented to the district court would have related to Brock's education at Brehm. That evidence would not be relevant for purposes of showing either intentional discrimination or a disparate impact, and the Parents have asserted no other basis for their § 504 claim. In a case like this, where two hearing officers and the district court have determined that the School District acted in good faith and did not violate Brock's procedural rights, neither of which determinations have been expressly challenged by the Parents in their complaint or in their brief before this Court, and where the district court concluded that the requirements of IDEA had been satisfied under the *Rowley* standard, we believe that the Parents have not presented a valid § 504 claim, and the district court properly held in favor of the School District.

**The Section 1983 Claim**

This Court agrees that a § 1983 violation may be premised on the fact that a defendant has committed a legal violation pursuant to a "custom" or with recklessness or callous indifference, but when, as here, there is no allegation in the record, including the Parents' complaint, that the School District has a custom to deny or refuse services under the IDEA or § 504 or that the School District has acted recklessly or with callous indifference, those bases for a § 1983 violation are simply unavailing. Again, the Parents' complaint as to § 1983 asserts only that the School District "intentionally" deprived Brock of his rights. As stated above, the Parents are bound by the allegations set forth in their complaint, and this Court will not explore a new theory of liability at this stage of the case. See *Craft,* 793 F.2d at 142–143. In fact, as discussed above, the two hearing officers found, and the district court appeared to agree, that the School District

---

**2.** The Parents' complaint in this case may be contrasted to the complaint filed in the *McWright* case, 982 F.2d 222, where this Court held that the plaintiff had sufficiently alleged both intentional discrimination and a disparate impact theory in a handicap discrimination in employment case under § 504.

was genuinely concerned about Brock's education, and the Parents have not suggested in their brief or before this Court that they had any evidence of intentional discrimination, recklessness or callous indifference to present to the district court. In sum, there is simply no allegation or evidence of bad faith in this case. Therefore, this Court agrees with the district court's finding that plaintiffs had not shown intentional discrimination nor any other sort of intent supporting a § 1983 claim.

Moreover, the district court found that the procedural safeguards required under the IDEA had been provided to Brock and that the IEP–1, as interpreted administratively, satisfied the requirements of the IDEA. In the district court and this Court, the Parents are not challenging any part of the hearing officers' IDEA conclusions other than their conclusion that the LRE for Brock is in the School District. As discussed below, this Court affirms that conclusion. Since a § 1983 action is predicated upon a violation of an individual's rights, and compliance with the IDEA's substantive and procedural mandates was found to have occurred here, there can be no valid § 1983 claim in this case. See *Crocker v. Tennessee Secondary School Athletic Ass'n*, 980 F.2d 382, 387 (6th Cir. 1992) ("Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights.").

In light of the foregoing, the district court properly entered judgment in favor of the School District on the Parents' § 504 and §§ 1983 and 1988 claims.

### B.

The Parents next challenge the district court's judgment in favor of the School District with respect to their request for the continuing placement of Brock at Brehm for the entire 1994–95 school year (rather than for one semester of that year). Both hearing officers ordered Brock to return to the School District in January 1995, following implementation of an IEP in accordance with the Level I hearing officer's order, with tuition reimbursement to stop at that point. The Parents request reimbursement for Brock's education at Brehm for the entire

1994–95 school year based upon the "stay-put" provision of the IDEA at 20 U.S.C. § 1415(e)(3)(A), which provides:

[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child. . . .

The Parents also emphasize that the Level I hearing officer found that Brock's placement at Brehm was appropriate under *School Committee of Burlington v. Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385.

■ In its review of the Level I and Level II hearing officers' orders, the district court reviewed their determinations with respect to the School District's compliance with the IDEA under the standard set forth in *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690. Under *Rowley*, a district court's review is limited to an analysis of the following: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" 458 U.S. at 206–207, 102 S.Ct. at 3051. The Supreme Court noted that "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Id.* at 208, 102 S.Ct. at 3052 (citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16). Applying this standard, the district court found that the relevant procedures under IDEA had been followed and that the IEP–1, *as interpreted by the Level I and Level II hearing officers*, was "reasonably calculated" to enable Brock to receive educational benefits. The court noted particularly its desire to defer to the professionals who had analyzed this case at the administrative level.

In addition to requiring an IEP–1 that confers educational benefit, the IDEA requires that educational benefit be delivered in the LRE. As to the placement of Brock at

Brehm for the period after January 1995, the district court cited the regulations promulgated under the IDEA that state that inherent in a FAPE is the policy of providing that education in the LRE. See 34 C.F.R. §§ 300.550–300.556. Section 1412(5)(B) of the IDEA states a general preference for mainstreaming special needs students whenever possible. To that end, the district court stated:

> Brock's parents may feel that Brehm offers an overall better education for their son, and if so, they are welcome to privately fund his attendance at Brehm. However, the IDEA does not guarantee the best possible education situation for Brock[;] all it guarantees is a "basic floor of opportunity" and "access to specialized instruction and related services which are individually designed to provide educational benefits to the handicapped child." *Rowley,* [458 U.S. at 201, 102 S.Ct. at 3048]. This goal "is a good deal more modest than [a] potential-maximizing goal." *Id.* at [n. 23].

*Monticello School District No. 25 v. George L.,* 910 F.Supp. 446, 449 (C.D.Ill.1995) [hereinafter *December 18th Order*]. Although the court noted several cases where a private school has been found to be the LRE for a student, *e.g., Flour Bluff Independent School District v. Katherine M.,* 91 F.3d 689 (5th Cir.1996); *Murphysboro,* 41 F.3d 1162; *Hall v. Vance County Board of Education,* 774 F.2d 629 (4th Cir.1985); *Roncker v. Walter,* 700 F.2d 1058 (6th Cir.1983), *certiorari denied,* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171, it determined that given the mild to moderate nature of Brock's disability, Brock did not "fit into the narrow exceptions to IDEA's mainstreaming preference." *December 18th Order* at 449.

 Whether a school district has provided a FAPE in the LRE is a mixed question of law and fact, which we review *de novo.* See *Murphysboro,* 41 F.3d at 1166–1167. If this Court finds that the district court has not made a mistake of law, we review the district court's decision under the clearly erroneous standard. *Id.*

 The language of § 1415(e)(3)(A) is unequivocal. The Supreme Court has described the purpose of the "stay-put" provision of the IDEA as one of preventing "school officials from removing a child from the regular public school class room over the parents' objection pending completion of the review proceedings." *Burlington,* 471 U.S. at 373, 105 S.Ct. at 2004; see also *Honig v. Doe,* 484 U.S. 305, 323, 108 S.Ct. 592, 604, 98 L.Ed.2d 686; *Rodiriecus L. v. Waukegan School District No. 60,* 90 F.3d 249, 252 (7th Cir.1996). The Parents withdrew Brock from the School District after they initiated due process hearings with respect to the IEP–1. The "stay-put" provision is meant to preserve the status quo during such due process hearings. However, the Parents' analysis of that provision would reverse that concept and create a new, permanent "stay put" for a unilateral placement. In addition, the cases cited by the *Parents—Burlington, Florence County School District Four v. Carter,* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284, *Board of Education of Oak Park v. Illinois State Board of Education,* 79 F.3d 654, 659, 660 (7th Cir.1996)—do not help them in their argument, because those cases all assert that the purpose of the stay-put clause is to keep the child where he or she is "until their dispute with the school officials is resolved." The Parents' challenge, which related only to the IEP–1, has been resolved, and the Parents were reimbursed for their unilateral placement of Brock at Brehm for the period covering the pendency of the administrative hearing process. This result is precisely what the case law interpreting the "stay-put" provision of the IDEA mandates, and no more.

 The Parents extrapolate too much from the Level I hearing officer's determination that the Brehm placement was appropriate for Brock. In *Burlington,* 471 U.S. at 369–370, 105 S.Ct. at 2002–2003, the Supreme Court recognized the right of parents who disagree with a proposed IEP to unilaterally withdraw their child from public school and place the child in private school, and held that IDEA's grant of equitable authority empowers a court to order school authorities to reimburse the parents retroactively "if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." See also *Carter,* 510 U.S. 7, 114 S.Ct. 361. Parents who make such a placement are · eligible for reimbursement

only if it is determined by the court that the private school placement was proper under the Act. *Id.* at 15, 114 S.Ct. at 366. That is what happened in this case. The Level I hearing officer found, and the Level II hearing officer agreed, that the Brehm placement was appropriate under the IDEA and that reimbursement was appropriate for that placement until such time as the new IEP incorporating the Level I hearing officer's changes could be implemented.

▆▆▆▆▆ However, the hearing officers also found that following implementation of that new IEP, Brehm was not the LRE for Brock. As described above, the IDEA and the case law interpreting the IDEA give strong preference to mainstreaming students with disabilities. See, *e.g., Rowley,* 458 U.S. at 202–203, 102 S.Ct. at 3048–3049; *Honig,* 484 U.S. at 311, 108 S.Ct. at 597–598; *Murphysboro,* 41 F.3d at 1168; *Oberti,* 995 F.2d at 1213–1214; *Roncker,* 700 F.2d at 1063. This directive is also referred to as the LRE requirement. The IDEA requires that, in determining a FAPE for any student, that student's education must take place in the LRE for the student. See 34 C.F.R. §§ 300.550–300.556; *Greer v. Rome City School District,* 950 F.2d 688, 695 (11th Cir. 1991), withdrawn, 956 F.2d 1025 (1992), reinstated in part, 967 F.2d 470; *Roncker,* 700 F.2d at 1063. But the LRE is not necessarily that placement which absolutely maximizes the student's educational opportunities. See *Rowley,* 458 U.S. at 189, 199, 201 n. 23, 102 S.Ct. at 3042, 3047, 3048 n. 23; *Wise v. Ohio Department of Education,* 80 F.3d 177, 185 (6th Cir.1996) ("Whatever its virtue as social policy, IDEA only requires states to provide children with disabilities an appropriate education, not the very best possible special education services."). This Court has not set forth a specific test for lower courts to apply regarding the determination of LRE,[3] but given the specific orders the Level I hearing officer made with respect to changes to the IEP–1, in this case we believe the district court gave proper deference to the hearing officers' finding that, with those mandated changes, the IEP–1 complied with the IDEA and the LRE for Brock would be in the School District. Likewise, their determination that such changes could be implemented by January 1995 was fully reasonable.[4]

Accordingly, the district court rightly held that the Parents were not entitled to reimbursement for Brock's education at Brehm after January 1995.

## C.

The Parents also challenge the district court's determination that they were not pre-

---

**3.** We note that the Third, Fifth and Eleventh Circuits have adopted the following test for determining compliance with the IDEA's mainstreaming preference:

First we ask whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily.... If it cannot and the school intends to provide special education or to remove the child from regular education, we ask, second, whether the school has mainstreamed the child to the maximum extent appropriate.

*Oberti,* 995 F.2d at 1215; *Greer,* 950 F.2d at 698–699; *Daniel R.R. v. State Board of Education,* 874 F.2d 1036, 1048 (5th Cir.1989). The Sixth and Eighth Circuits have adopted a slightly different analysis, namely whether the services that make a segregated facility placement superior academically could feasibly be provided in the non-segregated facility. See *A.W. v. Northwest R–1 School District,* 813 F.2d 158, 163 (8th Cir. 1987), certiorari denied, 484 U.S. 847, 108 S.Ct. 144, 98 L.Ed.2d 100; *Roncker,* 700 F.2d at 1063.

**4.** As noted above, the Level I hearing officer found compliance with the IDEA upon certain modifications to the IEP–1, which she listed in her order. The School District developed a new IEP (the "IEP–2") on December 8, 1994, following the Level I hearing officer's order. The Parents filed due process requests regarding the IEP–2 and both a Level I and Level II hearing officer dismissed the request. The Parents then filed with the district court an action for an injunction directing the hearing officer to conduct a due process hearing on the adequacy of the IEP–2. The court denied the Parents' request on November 2, 1995.

As the district court stated, without objection by either party to this proceeding, only the IEP–1 was before the court. The Parents cannot now in this Court claim reimbursement for expenses for Brehm that relate to the IEP–2; the only expenses at issue here are those expenses contemplated by the Level I and Level II hearing officers in connection with their review of the IEP–1. Those expenses were the issue the district court decided and the issue we review here. Any other result would be pure speculation on the part of this Court, in an area in which we are particularly not suited to speculate, and is more properly left to resolution in the IEP–2 proceedings.

vailing parties under the IDEA entitled to attorneys' fees. Section 1415(e)(4)(B) of the IDEA provides that, in any proceeding brought under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents ... of a child or youth with a disability who is the prevailing party."

This Court reviews the district court's determination whether to grant attorneys' fees under the IDEA in a highly deferential manner. We will reverse the district court's decision only for an abuse of discretion. See *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir.1988); *Max M. v. New Trier High School District No. 203*, 859 F.2d 1297, 1302 (7th Cir.1988). An abuse of discretion is found only when reasonable persons could not take the view espoused by the district court. See *Leffler v. Meer*, 936 F.2d 981, 984 (7th Cir.1991).

The district court applied the three-part test for the determination of whether a "prevailing party" is entitled to attorneys' fees developed by Justice O'Connor in her concurring opinion in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). That test directs a court to look at: (i) the difference between the judgment recovered and the recovery sought, (ii) the significance of the legal issue on which the plaintiff prevailed, and (iii) the public purpose of the litigation, *i.e.*, whether the plaintiff's success "accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Id.* at 121–122, 113 S.Ct. at 578. The district court noted that the Parents had achieved some victories in this case, but nevertheless felt that "in an overall sense [their] victory was *de minimis* and therefore will not carry attorney's fees," *Monticello School District No. 25 v. George L.*, Order of the District Court at 3 (C.D.Ill. February 27, 1996), focusing on the fact that the Level I and Level II hearing officers had found that the School District was the LRE for Brock in spite of the Parents' arguments to the contrary.

Applying the O'Connor *Farrar* test, the Parents claim that they prevailed overwhelmingly on the core issue of their case—whether the School District was delivering a

FAPE to Brock—and, therefore, that the first part of the test·is satisfied. The Parents correctly note that the Level I officer issued eight orders intended to cause the School District to deliver a FAPE to Brock. They argue that such success is neither technical nor *de minimis*, notwithstanding the Level I and Level II hearing officers' findings that the School District, not Brehm, was the LRE for Brock. As to the second part of the O'Connor *Farrar* test, the Parents assert that· the issue whether a FAPE was delivered to Brock is clearly significant given the history and purpose of the IDEA. Lastly, the Parents contend that application of the third part of the O'Connor *Farrar* test—the public purpose of the litigation—also should have lead the district court to award them attorneys' fees, because the public interest is served every time a student's rights under the IDEA are enforced.

This Court has not adopted the O'Connor three-part test explicitly in the IDEA context. However, we believe that test and the majority opinion in *Farrar* provide guidance in this case. The majority opinion in *Farrar* held that although " 'the *degree* of the plaintiff's success' does not affect '*eligibility* for a fee award,' " *id.* at 114, 113 S.Ct. at 574 (citing *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 790, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866) (emphasis added), the plaintiff's degree of success does impact the reasonableness of a fee award, and "[i]n some circumstances, even a plaintiff who formally 'prevails' ... should receive no attorney's fees at all," *id.* at·114–115, 113 S.Ct. at 574–575. In other words, when a plaintiff's success is simply technical or *de minimis*, no fees may be awarded, even if the plaintiff has succeeded on an·issue in the litigation and may thus be technically a "prevailing party." See also *Hunger v. Leininger*, 15 F.3d 664, 670 (7th Cir.1994), *certiorari denied*, —— U.S. ——, 115 S.Ct. 123, 130 L.Ed.2d 67 ("[T]actical victories in what turns out to be a losing war ... do not create a right to attorney's fees."); *Parents of Student W v. Puyallup School District, No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994). In *Farrar*, the court held that the plaintiff, who had sought compensatory dam-

ages but received only nominal damages in a § 1983 action,[5] was not entitled to attorneys' fees as a prevailing party in that litigation.

This Court agrees with the Parents that they are "prevailing parties" for purposes of the attorneys' fees provision of the IDEA, given the changes to the IEP–1 ordered by the Level I hearing officer. However, under both the majority and O'Connor concurring opinions in *Farrar,* we must still determine whether the district court abused its discretion in finding that the Parents' successes in this case were technical or *de minimis* because they did not prevail on their assertion that Brehm was the LRE for Brock, although they did secure reimbursement for Brock's attendance at Brehm on an interim basis. The Parents in this case clearly achieved more success than in *Hunger v. Leininger,* 15 F.3d 664, where the plaintiffs had only succeeded in obtaining an order for transitional services pending the disabled student's return to the school placement they had been disputing, because fairly significant changes to Brock's IEP–1 were ordered at the administrative level. The Parents did achieve a better program for Brock in the School District, with more personal attention to be paid to his specific needs. Nevertheless, although this is a close question, we cannot say the district court abused its discretion in finding such achievement *de minimis* in the context of the Parents' broader goals in this case.

Because this Court declines to upset the district court's finding regarding the *de minimis* nature of the Parents' success in this case, we need not discuss the other prongs of Justice O'Connor's three-part *Farrar* test. Under either the *Farrar* majority opinion or Justice O'Connor's concurring opinion, the Parents have not shown that the district court abused its discretion in denying the Parents attorneys' fees in this action.

5. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides in relevant part:

> In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

III.

For the reasons discussed above, the decision of the district court is AFFIRMED.

Our Court has frequently relied on case law construing § 1988 in the context of awards of attorneys' fees under the IDEA, and we have held that the term "prevailing party" has the same meaning under both statutes. See, *e.g., Board of Education v. Steven L.,* 89 F.3d 464 (7th Cir. 1996).