**MONTICELLO SCHOOL DISTRICT NO. 25, Plaintiff,**

v.

**ILLINOIS STATE BOARD OF EDUCATION, George L. and Carolyn L., on behalf of Brock L., a minor, Defendants.**

**GEORGE L. and Carolyn L., on behalf of Brock L., a minor, Counter–Plaintiffs,**

v.

**MONTICELLO SCHOOL DIST. NO. 25, Counter–Defendants.**

No. 95–2074.

United States District Court, C.D. Illinois, Danville/Urbana Division.

Dec. 18, 1995.

Larry D. Kuster, Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, Jacksonville, IL, for plaintiff.

Brian Dees, Asst. Atty. Gen., Springfield, IL, for Ill St. Brd.

Katherine M. Black, Carbondale, IL, for George L. Carolyn L.

### ORDER

BAKER, District Judge.

This case involves educational rights of a handicapped child under various federal statutes. The court upon review of the record upholds the 11–21–94 Level II Administrative Hearing Order under IDEA, and denies counterclaims under ADA § 504 and §§ 1983, 1988.

Brock L. has spent most of his school years in the Monticello Public School District. Brock suffers from Attention Deficit Hyperactivity Disorder (ADHD). Under governing federal law, ADHD is a handicap, and therefore Brock is guaranteed a free appropriate public school education. 20 U.S.C. §§ 1400(c), 1412(2)(B). Hammering out the limits and lengths of Brock's free appropriate public education is a complex and multifaceted job. It begins with a document called an individualized education plan (IEP). An IEP is created for each handicapped student by a meeting of educators and school personnel and the student and/or his parents. The IEP is then used to govern the handicapped student's education. If a

party is unhappy with a particular IEP that party may appeal the IEP to a Level I Hearing Officer. The Level I decision is appealable to a Level II Hearing Officer. A Level II decision is appealable to federal district court.

Brock attended Monticello public schools under various, regularly updated IEPs until his sophomore year in high school. At that time Brock's parents felt dissatisfied with the IEP in force [hereinafter IEP–1]. Brock's parents appealed IEP–1 and a Level I Hearing Officer heard the appeal and issued a decision in August, 1994. The Level I decision was cross appealed, and a Level II Hearing Officer issued a decision in November, 1994. In December, 1994, the school district made a new IEP to address the Level II decision [hereinafter IEP–2]. Meanwhile, in March, 1995, the school district filed a complaint in federal court challenging the Level II decision as to IEP–1, ignoring the existence of IEP–2. Brock's parents counterclaimed.

■ The issue now before the court is IEP–1 as interpreted by the Level II Hearing Officer in her November 21, 1994 decision. The court has jurisdiction per 20 U.S.C. § 1415(e). "In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." In suits brought under these judicial review provisions, a court must first determine whether the state has complied with statutory procedures, and must then determine whether the IEP is reasonably calculated to enable the child to receive educational benefits. If those requirements are met, the state has complied with obligations imposed by Congress and the courts can require no more. *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206–08, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

■ The court's review of Brock's IEP is restricted. "Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means

an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051. "[B]ecause courts do not have special expertise in the area of educational policy, they must give due weight to the results of the administrative decisions and should not substitute their own notions of sound educational policy." *Board of Education of Murphysboro v. Illinois State Board of Education*, 41 F.3d 1162, 1166 (7th Cir.1994) (quoting *Rowley, Id.*). The Seventh Circuit has recognized "the need to limit review of administrative decisions made under the IDEA and its precursors because judges are not trained educators." *Dell v. Board of Education, Township High School District 113*, 32 F.3d 1053, 1058 (7th Cir.1994) (quoting *Board of Education of Community Consolidated School District 21 v. Illinois State Board of Education*, 938 F.2d 712, 715 (7th Cir.1991) *cert. denied*, 502 U.S. 1066, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992)).

■ Under *Rowley* this court must make two decisions: (1) Were all the relevant procedures followed for Brock? And (2) Was IEP–1 as interpreted administratively "reasonably calculated" to enable Brock to receive educational benefits? The answers to both of these questions are "yes." Procedurally Brock received all of the process due to him under IDEA. A team of trained professionals met to create an IEP. Two administrative officers reviewed the IEP and wrote full, careful thorough decisions, analyzing the IEP and the claims of all parties. (See Level I decision of August 4, 1994 and Level II decision of November 21, 1994.) The two administrative decisions are complete and rational documents, showing full compliance with the procedures outlined in IDEA.

■ As for the second question, the substance of IEP–1. Under binding Supreme Court and Seventh Circuit law, this court must defer to the professionals who evaluated and analyzed Brock and his needs at all administrative levels. The parties have not pointed to any major flaws in the IEP, flaws requiring district court intervention. Nor has this court found any flaws that merit

court intervention. In light of this court's lack of educational expertise, the IEP itself and the administrative decisions interpreting it are impressive. The educators involved at all levels showed a concern for Brock's well being, and a knowledge of IDEA and its accompanying regulations. There is nothing to trigger this court's intervention.

Brock's parents argue that Brock should be schooled at Brehm Preparatory School. The parents unilaterally placed Brock at Brehm, a private school for disabled students in March, 1994. Although the Level I Hearing Officer ordered Monticello to reimburse Brock's parents for his Brehm tuition from March, 1994 through the end of the first 1994–95 semester, both Level I and Level II orders agreed that Brock could receive an appropriate education in Monticello High School. Brock's "disability is neither so profound nor so complex that he requires a separate facility to receive an appropriate program." (Level II order quoting Level I order).

Under IDEA, a child is to receive a free appropriate education. 20 U.S.C. § 1415. The regulations promulgated under IDEA state that inherent in a free appropriate education is the policy of providing that education in the least restrictive environment. 34 C.F.R. §§ 300.550–300.556. The IDEA states a specific and general preference for mainstreaming special needs students whenever possible. 20 U.S.C. § 1412(5)(B). Brock's parents, the defendants/counterplaintiffs in this action go to great lengths to point out that in certain individualized instances a private school has been found to be the least restrictive environment for a student. *E.g., Hall v. Vance County Bd. of Education*, 774 F.2d 629 (4th Cir.1985) (allowing segregated education under IDEA for a dyslexic student); *Roncker v. Walter*, 700 F.2d 1058 (6th Cir.) *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983) (remanding for possible segregated schooling for a severely retarded student). This court does not disagree—there are instances where a private school is the least restrictive environment for providing a disabled student with a free appropriate public school education.

Regardless of whether a publicly paid for private education is sometimes appropriate, IDEA states a clear preference for mainstreaming whenever possible. Students are to be educated "with children who are not handicapped, and special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(5)(B). The gist of this clear statutory language supports the decisions of the Level I and Level II hearing officers that Brock can receive an appropriate education at Monticello Public High School. Brock is not severely handicapped. There is some dispute as to whether he is mildly or moderately handicapped, but all agree that he is on the non-severe side of the spectrum. IDEA promotes mainstreaming. Private or segregated education is an available remedy, but it is reserved for exceptional instances. Brock's situation does not fit into the narrow exceptions to IDEA's mainstreaming preference.

■ Brock's parents may feel that Brehm offers an overall better education for their son, and if so, they are welcome to privately fund his attendance at Brehm. However, the IDEA does not guarantee the best possible educational situation for Brock, all it guarantees is a "basic floor of opportunity" and "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Rowley*, 458 U.S. at 201, 102 S.Ct. at 3048. This goal "is a good deal more modest than [a] potential maximizing goal." *Id.* at 201 n. 23, 102 S.Ct. at 3048 n. 23.

One final matter remains before the court—the counterclaims of Brock's parents under the ADA § 504, and §§ 1983, 1988. The counterclaims must be denied. IDEA allows for actions under other federal statutes, so these counterclaims come before the court for full review. 20 U.S.C. § 1415(f). However, the counter-plaintiff has failed to prove a violation of any of these federal statutes. Since this court finds that IEP–1 and the administrative decisions interpreting

**450**

it comply with IDEA, there is no basis for a finding of intentional discrimination against Brock, nor of an intentional violation of Brock's constitutional rights.

IT IS THEREFORE ORDERED THAT judgment is granted to the defendants and the counter-defendants.

The clerk is directed to enter judgment in favor of the defendants and against the plaintiff, and in favor of the counter-defendants and against the counter-plaintiffs.