ROY AND ANNE A. as Parents of
Matt A., a minor, Plaintiffs,

v.

VALPARAISO COMMUNITY SCHOOLS,
et al., Defendants.

No. 2:95–CV–295–RL.

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 30, 1997.

**1372**

Katherine M. Black, Carbondale, IL, for Roy and Anne A., as parents of Matt A., a Minor.

Monica J. Conrad, Thomas A. Morris, Jr., Brydges, Riseborough, Peterson, Franke and Morris, Chicago, IL, for The Valparaiso Community Schools, Helen Giola, The Board of Governors of the Valparaiso Community Schools, Stephen Buck, Joyce Nicholas, Robert Koenig, Lorie Woycik, Douglas McMillan, The Porter County Education Interlocal, The Board of Governors of the Porter County Education Interlocal, Kenneth Payne, Roger Luekens, Perry Glancy, George McKay.

Thomas A. Morris, Brydges, Riseborough, Peterson, Franke and Morris, Chicago, IL, for Leroy Web Dell, Don Bivens, Michael Benway, Fred McNulty.

Pamela Carter, Frances Barrow, Indiana Attorney General, Indianapolis, IN, Kathryn Symmes Kirk, Office of the Attorney General, Indianapolis, IN, for The Indiana Board of Education.

Pamela Carter, Frances Barrow, Kathryn Symmes Kirk, Office of the Attorney General, Indianapolis, IN, for Suellen Reed, State Superintendent of Education, in her individual and official capacity.

Frances Barrow, Indiana Attorney General, Indianapolis, IN, for The Indiana Board of Education, Suellen Reed.

### ORDER

LOZANO, District Judge.

This matter is before the Court on the following: (1) Renewed Motion for Summary Judgment, filed by Plaintiffs on March 21, 1996; and (2) School Defendants' Motion for Summary Judgment, filed on April 26, 1996. For the reasons set forth below, the Renewed Motion for Summary Judgment is **DENIED,** and School Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT IN PART.**

*BACKGROUND*

Plaintiffs, Roy and Anne A. ("the Parents"), are the parents of Matt A., a child with disabilities and special education needs. Defendants are a variety of education officials and entities whom the Parents allege are responsible for providing Matt with an appropriate education and have failed to do so. Defendants fall into two camps: the "School Defendants," who are affiliated with the local public school system where Matt was previously enrolled, and the "State Defendants" who are affiliated with the State of Indiana.

This case is predominately one under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et. seq.* ("IDEA"). The IDEA guarantees disabled children a "free appropriate public education," in other words, an adequate education at public expense. *See Bd. of Educ. v. Rowley,* 458 U.S. 176, 181, 102 S.Ct. 3034, 3037–38, 73 L.Ed.2d 690 (1982).

In 1992, Matt and the Parents moved to the Valparaiso, Indiana area, and Matt began attending public school there. Matt completed the 1992–93 school year at the public school. During that year, public school officials and the Parents participated in no less than five "case conferences" addressing Matt's special education needs. In May 1993, the public school proposed an individualized education program ("IEP") for Matt for the 1993–94 school year. However, the Parents took Matt out of the public school for the 1993–94 year and enrolled him at a private school.

In the fall of 1994—Matt's second year at the private school—the Parents initiated state administrative proceedings against the School Defendants, asserting that the May 1993 IEP had been inadequate, that they were entitled to be reimbursed for Matt's private school tuition to date, and that Matt should receive continued placement in the private school at public expense. The first step of the proceedings was a "due process" hearing before a state hearing officer. The officer heard three days of testimony from experts and the Parents. She ruled for the

School Defendants. In her ruling, she deemed the May 1993 IEP adequate, denied the Parents private tuition reimbursement and continued placement in the private school, and ordered the School Defendants to prepare an IEP for Matt consistent with her findings. The Parents took an administrative appeal and lost. They then initiated the present action in this Court against both the School Defendants and the State Defendants. The Parents claim that Defendants have violated the IDEA, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. section 1983. The Parents would like to be reimbursed for their private school tuition to date, and to have Matt continue to attend the private school, but at public expense.

## DISCUSSION

The Parents have moved for summary judgment solely on their IDEA claim. The opposition to the Parents' motion on the merits has come principally from the School Defendants, not the State Defendants.

The IDEA's primary aim is ensuring that disabled children receive an education sufficiently tailored to their specific needs. *Rowley,* 458 U.S. at 179–82, 102 S.Ct. at 3037–38. To achieve this aim, Congress provides money to the states to use to educate disabled children, and in return the states must maintain policies that "assure[ ] all [disabled children] the right to a free appropriate public education." *Id.* at 180–81, 102 S.Ct. at 3037 (quoting 20 U.S.C. § 1412(1)).[1] An "appropriate" education does not mean the best one possible; instead, the state must provide an IEP that is "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051; *Bd. of Educ. of Murphysboro v. Ill. Bd. of Educ.,* 41 F.3d 1162, 1166 (7th Cir.1994). The IEP is the centerpiece of the drive for appropriate schooling for disabled children, and is devised with the combined input of parents, educators, and sometimes the child. *Rowley,* 458 U.S. at 181–82, 102 S.Ct. at 3037–38.

Parents who are unsatisfied with the services a school provides their child can have a state administrative "due process" hearing on their complaint. *Rowley,* 458 U.S. at 182–83, 102 S.Ct. at ——. A party aggrieved by the hearing decision may in some circumstances take a state administrative appeal. 20 U.S.C. § 1415(c); *see Rowley,* 458 U.S. at 182–83, 102 S.Ct. at 3038–39. In turn, any party aggrieved by the result of the administrative appeal may sue in federal district court, *Rowley,* 458 U.S. at 183, 102 S.Ct. at 3039; 20 U.S.C. § 1415(e)(2), as the Parents have done here.

The district court's inquiry in an IDEA suit has two prongs: "First, has the State complied with the procedures set forth in the [IDEA]? And second, is the [IEP] developed through the [IDEA's] procedures reasonably calculated to enable a child to receive educational benefits." *Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3050–51. If a school meets these two prongs, "the courts cannot require more." *Murphysboro,* 41 F.3d at 1166. Indeed, the purpose of the IDEA is not to educate a disabled child to his "highest potential," but to " 'open the door of public education' to [disabled] children." *Murphysboro,* 41 F.3d at 1166 (quoting *Bd. of Educ. of School Dist. No. 21 v. Ill. State Bd. of Educ.,* 938 F.2d 712, 715 (7th Cir.1991)).

The standard of review the district court applies to the administrative decision lies somewhere between the deferential and the de novo. *K.R. by M.R. v. Anderson Com'ty School Corp.,* 887 F.Supp. 1217, 1221 (S.D.Ind.1995), *rev'd on other grounds,* 81 F.3d 673 (7th Cir.1996). Rather than use the substantial evidence standard common to review of administrative proceedings, the district court "must independently determine whether the requirements of the [IDEA] have been satisfied." *Murphysboro,* 41 F.3d at 1166. "However, because courts do not have special expertise in the area of educational policy, they must give 'due weight' to the results of the administrative decisions and should not substitute 'their own notions of sound education policy for those of the school authorities which they review.' " *Id.* (quoting *Rowley,* 458 U.S. at 206, 102 S.Ct. at

---

1. The statute we know today as the IDEA had a name change in 1990. *See* 20 U.S.C.A. § 1400(a) (West Supp.1996). This Court has substituted the terms "IDEA" and "disabled" where needed to conform with the current name and preferred terminology.

3051); *accord Monticello School Dist. No. 25 v. George L.,* 102 F.3d 895, 901–02 (7th Cir. 1996). " 'Due weight' necessarily implies some sort of deference" to the decisions of state hearing officers. *Murphysboro,* 41 F.3d at 1167.[2]

In district court, the party challenging the outcome of state administrative hearings bears the burden of proof by a preponderance of the evidence. *Murphysboro,* 41 F.3d at 1167. In Indiana due process proceedings, the "public agency," i.e., the school, bears the burden of proof, although the quantum is not specified. 511 IAC 7–15–5(p).

The Parents challenge the School Defendants both procedurally and substantively on a variety of points. Before proceeding to analyze those points, the Court notes some shortcomings in how counsel for the Parents and the School Defendants have argued this case. The Parents' counsel exhibits something of a "buckshot" approach to advocacy. Counsel asserts fifteen or more errors; an accurate count is difficult because the errors run together. For many supposed errors, counsel provides little or no support in law or the record. Counsel for the School Defendants often does not respond squarely to the Parents' arguments. In the end, the Court has given the issues a fair and thorough analysis, but it has a limited duty and ability to comb through a 3,000 page administrative record, do substantial research, or otherwise flesh out arguments on behalf of counsel. *See Tyler v. Runyon,* 70 F.3d 458, 464–65 (7th Cir.1995).

The Parents assert that the May 1993 IEP devised for Matt was inadequate. In devising that IEP, the public school had two broad tasks. First, it had to identify Matt's needs in light of his disabilities. Second, the school had to provide services that adequately met those needs. *See Burlington School Comm. v. Dept. of Education,* 471 U.S. 359, 368, 105 S.Ct. 1996, 2001–02, 85 L.Ed.2d 385 (1985) ("The IEP is in brief a comprehensive statement of the educational needs of a handi-

capped child and the specifically designed instruction and related services to be employed to meet those needs.") The Parents assert that the School Defendants failed both tasks.

▮ The Parents argue that the May 1993 IEP said Matt has one disability he does not have, and failed to identify a disability that he does have. Specifically, the Parents assert that Matt does not have an emotional handicap. They say that any emotional difficulties Matt may have displayed when he was in the public school were fueled largely if not exclusively by the very frustration he experienced because the public school did not give him the services he needed. The Parents also assert that Matt does have. a central auditory processing defect (CAPD).

The May 1993 IEP identified Matt's "primary" disability as emotional handicap, and it did not identify CAPD as a disability for Matt. The hearing officer identified "emotional handicaps" as part of a "complex interplay" of difficulties Matt had. A.R. 163. She emphasized that as of May 1993, for Matt to benefit from special education his "emotional," "social," and "behavioral" concerns had to be managed. A.R. 160. As far as any CAPD, the hearing officer concluded that only "speculative" evidence supported the notion that such a disability was affecting Matt's educational performance. *Id.*

So, the Parents argue that the hearing officer and the May 1993 IEP erred (1) in identifying emotional handicap as one of Matt's disabilities, and (2) not identifying CAPD as one of his disabilities. However, the record adequately supports the IEP and the hearing officer.

As for emotional handicap, in exhaustive testimony hearing witnesses for both sides seemed to agree that Matt has some emotional/behavioral problems. Where they disagreed was on whether those problems are caused by frustration Matt feels because of his other disabilities, or whether they exist independent of those disabilities. Yet even

**2.** The Seventh Circuit has sent conflicting signals on whether the district court should also give deference to the educators who devised an IEP. *Cf. Murphysboro,* 41 F.3d at 1167 with *Lachman v. Ill. State Bd. of Educ.,* 852 F.2d 290, 293 (7th Cir.1988). This Court has given the educators no deference in this case.

on this point the witnesses were not that far apart overall—they seemed to recognize that a reasonable basis for each other's opinions could exist.

Indeed, Matt's documented behavior in the public school appears to fit the definition of emotional handicap. The record indicates that during one school year, Matt had a two-week psychiatric hospitalization; hit another student in the face without provocation; had a shoving match with another student; threw food; knocked over a chair and desk; threw a chair; smoked in the school parking lot; used "bad language"; verbally abused school staff; wrote down the length of his arm with a marker, tearing his sweatshirt in the process; brought a knife to school; talked about committing suicide; did not bring a book to class and refused to work because of it; forged his parents' signatures; and complained of being tired and slept in class.

In defining "emotional handicap," an Indiana regulation states that emotional conditions include:

(1) a tendency to develop physical symptoms or fears associated with personal or school problems.

(2) a generally pervasive mood of unhappiness or depression.

(3) an inability to learn that cannot be explained by intellectual, sensory, or health factors.

(4) an inability to build or maintain satisfactory interpersonal relationships.

(5) inappropriate behaviors or feelings under normal circumstances.

511 IAC 7–11–5(a). Matt's behavior certainly manifested "unhappiness or depression," conduct that would inhibit "interpersonal relationships," and "inappropriate behaviors or feelings." All in all, the evidence provided the hearing officer with a reasonable basis for her characterization of Matt as emotionally handicapped. Affording this conclusion due weight, it should not be reversed.

As for CAPD, some witnesses suggested that no such thing exists for anyone, or that CAPD is very difficult to diagnose in someone with other disabilities such as the learning disability and attention deficit disorder that the Parents claim Matt has. With this

testimony, the hearing officer was justified in refusing to recognize a CAPD as playing a prominent part in Matt's needs. Moreover, the hearing officer noted that to any extent Matt suffers from a CAPD, the May 1993 IEP provided accommodations (preferential seating and noise reduction) that were reasonable and adequate in light of Matt's other, better-documented and more immediate needs. In sum, the due weight afforded the hearing officer means this Court will not overrule her determination that Matt has an emotional handicap and that CAPD plays little or no part in his needs.

In addition to asserting that the May 1993 IEP improperly identified Matt's disabilities, the Parents assert that it failed to provide for his needs. The hearing officer did deem that the IEP met Matt's needs as of May 1993. The Parents stress that the School Defendants bore the burden of proof on that point, and they argue that the School Defendants simply presented no evidence which gave the hearing officer a basis for her conclusion.

At the outset, the School Defendants insist that the hearing only addressed the issue of whether the May 1993 IEP had correctly identified Matt's disabilities; according to the School Defendants, the hearing did not address whether they had provided Matt with the services adequate for the needs presented by his identified disabilities. However, the hearing officer's handling of the case shows that she considered not only identification of Matt's disabilities, but also what needs his disabilities presented, and, finally, whether the May 1993 IEP provided services adequate for those needs. To illustrate, one issue she identified was whether the School Defendants failed to "identify *and program for* [Matt's] needs." A.R. 158 (emphasis added). Also, her decision clearly identified what she thought Matt's needs were at the time of the May 1993 IEP, and it deemed the May 1993 IEP to have "programmed for all" those needs. A.R. 160–61. In these ways, the hearing officer tackled the ultimate question of whether the IEP provided services adequate for Matt's needs.

Giving the School Defendants their due, however, the record does reveal that identifi-

cation issues predominated in the hearing. As the hearing officer observed, "the crux of the controversy between [the Parents and the School Defendants] arises from the [School Defendants'] identification of the child as primarily emotionally handicapped with learning disability as a secondary handicapping condition. [The Parents] contend that the child's behavioral, social and emotional difficulties arise from a combination of his learning disabilities, attention deficit, and [CAPD] difficulties." A.R. 156.

■ Returning to the Parents' point, they specifically assert that the May 1993 IEP failed to address "most of Matt's learning disabilities" and his attention deficit disorder.[3] The Parents also assert that the IEP did not properly address the very emotional handicap it said Matt has. However, the Parents have not told the Court in any detail what was missing from or wrong with the IEP. In other words, they do not spell out what the public school should have done to fix the IEP. Instead, the Parents stress that the School Defendants did not meet their burden of presenting evidence to the hearing officer showing that the IEP adequately addressed Matt's needs. Indeed, even after the Court ordered supplemental briefing, the School Defendants have been unable to identify any evidence they presented which directly and specifically showed that the IEP adequately addressed Matt's needs. However, the Court does not find this fatal to the School Defendants.

As a first step, the Court will accept the hearing officer's characterizations of Matt's needs. A.R. 160–61, 168. The Court has already accepted her identification of Matt's disabilities. The Parents have not mounted any substantial attack on what needs the hearing officer believed those disabilities present. In these circumstances, the weight due the hearing officer's assessment of Matt's needs is to accept it.

However, as the Parents stress and the School Defendants effectively concede, no testimony or exhibit told the hearing officer *how* the May 1993 IEP *met* those needs. What appears to have happened is that the

hearing officer, armed with her knowledge of Matt's needs rooted in three days of testimony and hundred's of pages of documents, simply read the IEP for herself and concluded that it met his needs.

Citing no meaningful authority, the Parents effectively say that the hearing officer was not qualified to do this. According to them, the hearing officer could not merely read the IEP herself and deem it adequate— someone or something had to specifically attest to its adequacy. This proposition seems to discount the "special expertise in education law" that state hearing officers generally have. *Murphysboro*, 41 F.3d at 1167. That the hearing officer had special expertise seems to have been the case here. The hearing record depicts the officer as well as counsel for both sides as familiar with special education issues. Discourse between them reveals a fair amount of mutually assumed knowledge regarding the needs of disabled children and accepted methods of addressing such needs. The hearing officers' written ruling similarly displays an ability to understand and balance the complex issues presented by Matt's case. These appearances make the Court hesitate to second-guess that the hearing officer had a basis—given her expertise—for reaching a conclusion that the evidence did not expressly speak to.

The Parents have not attempted to affirmatively prove that the May 1993 IEP did not meet Matt's needs. Instead, they have shouldered the burden of proving in this Court that the School Defendants did not meet their burden below of proving the IEP adequate. This argument substantially hinges on the notion, toward which the Parents have not offered meaningful proof, that the hearing officer lacked the special expertise which hearing officers are generally assumed to have and on which the entire "due weight" standard is premised. As such, the Parents have not made a strong showing on this point.

The Parents also cite other substantive defects in the May 1993 IEP. They suggest that the IEP would have put Matt in full-

---

3. The parties may debate whether Matt has attention deficit disorder or attention deficit/hyperactivity disorder. Whatever the reason for any such debate, it has no bearing on this ruling.

time special education classes with nothing but emotionally handicapped students. This is inaccurate. As for the nature of the classes, the IEP would have placed Matt in special education classes 77% of the time and in regular classes the other 23%. A.R. 2010. As for the students in those classes, the Parents have offered no evidence that all of them would have been emotionally handicapped.

Taking the hearing officer's ruling out of context, the Parents argue that the officer "agreed with" them that Matt is not emotionally handicapped. In the ruling portion the Parents cite, the hearing officer noted that Matt's behavioral concerns were "likely to be triggered by other children with significant behavioral concerns." A.R. 165. She decided that accordingly, Matt should not be placed with "children who exhibit significant psychopathology, behavior disturbances, or delinquent behavior." *Id.* This is not the same as saying Matt is not emotionally handicapped. Neither is it sufficient to undo all the other points in the hearing officer's ruling where she noted that Matt's emotional and behavioral problems predominated.

The Parents also assert that through inconsistency in her ruling, the hearing officer herself effectively deemed the May 1993 IEP inadequate. Taking the ruling in context, however, the Parents have not prevailed on this point.

The Parents stress that the officer ordered a placement which included services the May 1993 IEP did not include. Because the hearing officer saw fit to add to the IEP, the Parents argue, it must not have been adequate in the first place. As the Parents also stress, the hearing officer might seem to have expressly contradicted herself. Her ruling set out what she believed Matt's needs were at the time of the May 1993 IEP. Then, in the next paragraph, she stated: "The I.E.P. developed by [the School Defendants] programed for all the child's needs identified above. It did not, however, address certain of the childs [sic] affective goals and objectives within the framework of a behavior management plan." A.R. 161. In sum, the Parents argue, the officer simultaneously and illogically deemed the May 1993

IEP to be adequate, but also lacking something Matt needed.

Yet the hearing officer's ruling is not so hard to reconcile after considering that the hearing encompassed two prominent and distinct issues: (1) What were Matt's needs in May 1993?; and (2) What were his needs two years later at the hearing? Despite some ambiguous wording, the thrust of the officer's ruling is that she viewed the evidence as showing that Matt had different needs and the School Defendants faced different demands in May 1993 as opposed to at the time of the hearing.

The officer concluded that the May 1993 IEP was reasonable and adequate "at that time." A.R. 168. "That time" would be in May 1993, after Matt had been attending school in Valparaiso for just one year, a year in which his emotional and behavioral problems seemed to escalate. By May 1993, the hearing officer's ruling and the record suggest, Matt's emotional and behavioral concerns were quite serious and took center stage in trying to assist him.

By the time of the hearing, the officer appears to have concluded, the evidence then available painted a different picture. Indeed, the hearing testimony focused as much if not more on what happened to Matt during the two years after he left the public school as on the time he was there; consequently, the testimony addressed information and perspectives not available to the School Defendants while they were holding the case conferences in 1992–93 that led to the May 1993 IEP. Indeed, the hearing officer suggested that while at the private school, Matt's needs had changed; he had improved in some areas yet declined in others. A.R. 162–63, 165.

After reviewing her ruling as a whole, the Court finds it unlikely that the hearing officer made the blunder of declaring adequate an IEP that she believed could only have been made adequate by adding to it. More likely, she reasonably saw Matt as a child for whom the May 1993 IEP was reasonable and adequate "at that time," but who was entitled to something different two years later. *See Roland M. v. Concord School Comm.,* 910 F.2d 983, 988 & n. 2, 992 (1st Cir.1990)

(suggesting (1) that adding features to an IEP after implementing it does not necessarily mean the IEP was inadequate in the first place, and (2) that "[a]n IEP is a snapshot" which must be assessed in terms of what was "objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated"). The something different would have been the "behavior management plan" to address Matt's "affective goals and objectives" that the hearing officer said the May 1993 IEP lacked. *See* A.R. 161. Despite any impression of inconsistency left by the hearing officer's words, the Court cannot accept the Parents' reading of her ruling as inherently self-contradictory.

■ The Parents also suggest that they were "hostile" to the May 1993 IEP, a factor that could work against the School Defendants under *Bd. of Educ. of Community Consolidated School Dist. No. 21 v. Illinois St. Bd. of Educ.*, 938 F.2d 712 (1991). *District 21* ruled that "if the facts show that the parents are so opposed to a placement as to undermine its value to a child, there is no obligation to order the placement." 938 F.2d at 718. More specifically, the parents in that case had criticized and undermined their child's placement to the point of "poisoning" it in the child's mind. *Id.* at 717. The Seventh Circuit ruled that the district court could properly consider such "poisoning" in determining whether the child could derive adequate educational benefits from the placement. *Id.* at 717–18. A dissent warned that under the ruling, parents who are simply stubborn and disruptive enough will have an "absolute veto" over any plan a school can devise. *Id.* at 719.

*District 21* is inapplicable to the May 1993 IEP. The hearing officer's factual findings demonstrate that she rejected the notion that Matt's parents had opposed the IEP so forcefully as to, in the words of *District 21*, " 'doom' its prospects" for Matt. 938 F.2d at 719. As the officer noted, Matt's mother participated in all five case conferences, signed documents showing her unqualified agreement with the plans developed in each conference, and did not provide the school with notice that she later came to disagree with the plans. A.R. 161–62. These factors

hardly depict Matt's parents as criticizing the IEP to the point where Matt could not abide by it and would receive no benefit from it. As the only evidence of their hostility, the Parents offer their testimony that they were opposed to the placement the School Defendants were proposing for Matt *at the hearing,* not in May 1993. A.R. 1182, 1190.

"Hearing officers are best positioned to assess ... whether parental attitudes pose a real threat to the success of the proposed IEP." *Dist. 21,* 938 F.2d at 718. This Court finds no reason to disturb the hearing officer's implicit conclusion that Matt's parents did not offer the level of hostility to the May 1993 IEP that is significant under *District 21.* Moreover, the Court would reach the same conclusion itself.

The procedural aspect of the IDEA must be balanced against any substantive headway the Parents have mounted against the May 1993 IEP. Indeed: "[A]dequate compliance with the procedures prescribed [in the IDEA] would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *George L.,* 102 F.3d at 901 (quoting *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050–51). Despite the Parents' arguments to the contrary, the May 1993 IEP was created in procedural compliance with the IDEA.

■ On a general note, the IEP was the culmination of considerable efforts on Matt's behalf, efforts that bespeak of compliance with the IDEA's requirements and intent. Many individuals devoted a considerable amount of time and energy to meet Matt's needs. During a one-year period, the public school held no less than five case conferences on Matt, with his parents and several school officials involved in each one. The public school compiled page after page of documents relating to Matt. Also, the public school appears to have been capable of providing a wide array of special education services for children with learning disabilities, attention deficit disorders, and emotional handicaps. In short, the record creates the appearance that the public school had and applied resources that were at the least "reasonably calculated to enable [Matt] to receive educational benefits," *Rowley,* 458 U.S. at

206, 207, 102 S.Ct. at 3050–51, 3051, in other words, to "open the door of public education" to Matt, *Murphysboro*, 41 F.3d at 1166 (quoting *Dist. 21*, 938 F.2d at 715). Of course, simply because the School Defendants appear to have been capable and have worked hard for Matt does not automatically mean they satisfied the IDEA. Yet the Court does not believe it should ignore these appearances.

Against this backdrop, the only procedural violations that the Parents assert as infecting the May 1993 IEP involve evaluating Matt's proposed CAPD. The Parents contend that the public school did not timely evaluate Matt for CAPD and did not notify them that it had decided not to evaluate him. The hearing officer concluded that any delay in evaluating Matt for CAPD was reasonable.[4]

█ This Court believes any delay was a nonissue. Not all technical violations of IDEA procedure are actionable. *Independent School Dist. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir.1996); *Roland M.*, 910 F.2d at 994; *Doe v. Defendant I*, 898 F.2d 1186, 1191 (6th Cir.1990). Delay in evaluating Matt for a disability that the hearing officer rightly treated as inconsequential could not have harmed Matt. Moreover, the May 1993 IEP that the Parents challenge included accommodations that the hearing officer deemed adequate to address any CAPD that Matt might have, a conclusion that the Parents have not effectively challenged.

Having covered the substantive and procedural adequacy of the May 1993 IEP, the focus shifts to Matt's needs at the time of the hearing. The hearing officer determined that because the public school had offered Matt an adequate IEP in May 1993, the School Defendants did not have to reimburse the Parents for Matt's private school tuition during the two years between May 1993 and the hearing. The hearing officer went on to describe in detail what Matt's needs were as of the hearing and what services would meet those needs. She then ordered that the School Defendants prepare an IEP consistent with her findings. A.R. 170. The Parents seem to characterize this order as a "placement" for Matt. The Parents declined the placement, keeping Matt in the private school instead. The Parents now argue that the placement was deficient both procedurally and substantively.

At the outset, the Court notes that it is not so sure that the hearing officer's order constituted a final placement. What the officer ordered was for the School Defendants to prepare an IEP "consistent with" her findings. A.R. 170. Presumably, that IEP would have been Matt's placement. Yet no party has produced the IEP, nor even informed the Court if the School Defendants developed one. However, an Indiana regulation seems to contemplate that parties can appeal a hearing officer's decision without implementing the order in the hearing decision. 511 IAC 7–15–6(u). As has happened with some frequency in this case, the Court must accept the issues as the parties frame them and proceed on limited information. The Court will treat the hearing officer's order as Matt's placement.

█ On the substantive side, the Parents hit a familiar theme by asserting that the hearing officer heard no testimony on the appropriateness of her placement. Yet the hearing officer heard three days of testimony about Matt's needs, and received hundreds of pages of documents on the same issue. True, some of the testimony came from the Parents' own witnesses, and the hearing officer did not do everything those witnesses recommended. But these factors do not mean that the hearing officer's placement was based on "no testimony." As with her decision on the adequacy of the May 1993 IEP, the Court does not believe that in formulating her placement, the hearing officer could only parrot what others told her. Rather, she could synthesize all the information given to her and devise an adequate placement.

█ The Parents also suggest that the hearing officer ordered a placement that the School Defendants may not have been able to provide. Yet the hearing officer's ruling de-

---

4. In fact, in a potential issue the parties have not focused on, the hearing officer also indicated that delay in and of itself was not "a complainable issue." A.R. 156.

clares that she had authority to order a placement regardless of whether the School Defendants were presently capable of implementing it. A.R. 169. Indeed, the officer ordered that the School Defendants "contract for or otherwise arrange for the services deemed necessary for the child by this decision," A.R. 170, consistent with the Indiana regulation that allows local public school corporations to contract for "the delivery of special education," 511 IAC 7–4–3(c). In sum, the hearing officer appeared to have had and used authority to order the public school to "do what it takes" to adequately educate Matt. The Parents have not demonstrated that the hearing officer lacked this authority.

■ The Parents stress their belief that the School Defendants came to the hearing wanting to place Matt full-time with nothing but emotionally handicapped students in a day treatment or residential program separate from the public school, a placement the Parents call inappropriate. Yet the hearing officer specifically found that placing Matt with children exhibiting significant behavioral concerns would be inappropriate, and she deemed the appropriate placement for Matt to be a "full-time special education class *with learning disabled students in an area high school.*" A.R. 165 (emphasis added). On the administrative appeal, the School Defendants actually challenged these points unsuccessfully, evidencing that they did not get the placement the Parents say they wanted. In the end, what the School Defendants wanted is not relevant, because the hearing officer did not give it to them. *See Roland M.,* 910 F.2d at 988 ("The court's focus is upon the education program which finally emerges from the administrative review process, not the IEP as originally proposed.").

The Parents again argue that their hostility to the hearing officer's placement undermines the placement. As noted, the Parents' evidence is that they said at the hearing that they would not cooperate with the placement—or something like that. What the Parents actually said was that they would not cooperate with placing Matt in a day school with all emotionally handicapped children. A.R. 1182, 1190. As already covered, although the School Defendants may have wanted that placement, the hearing officer did not order it. So, the Parents have not expressed hostility toward the placement Matt actually received. Also, only at the hearing upon questioning by counsel did the Parents say they would resist the placement described in counsel's hypothetical. Again, the hearing officer was in the best position to determine whether the Parents' "hostility [was] manufactured," *Dist. 21,* 938 F.2d at 718, and the officer implicitly gave no credence to the professed hostility. The Parents have failed to show that any hostility they had would "doom the prospects" of the hearing officer's placement.

■ The Parents also assert that the hearing officers' placement failed to include therapy for Matt's CAPD and accommodations for his attention deficit disorder. The previous discussion of the CAPD demonstrates that the hearing officer was not obligated to provide CAPD therapy. As for attention deficit accommodations, true to form the Parents have not identified what was lacking in the hearing officer's ruling and order. They merely assert that the proper accommodations were not included, without specifically identifying what Matt needs but did not get. As before, this type of bald assertion carries little weight.

■ At the hearing and in this Court, the Parents have devoted much effort to showing that the private school can provide Matt with excellent services. Even if true, the IDEA does not require the public school to match the private school's virtues. *See Roland M.,* 910 F.2d at 993 (noting that the question was not whether a public school's program "was 'better' or 'worse'" than a private school's, but whether the public school's program was adequate). Rather, all the public school need do is offer services that are "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051. Consequently, the Parents cannot prevail merely by showing that the private school is better than the public.

■ On the procedural side, the Parents insist the hearing officer erred by considering the School Defendants' draft IEP. In

preparation for the hearing, the School Defendants devised a draft IEP that they apparently hoped would document what Matt's then-current needs were and show how they planned to meet them. The Parents insist that it was improper for the hearing officer to consider this draft IEP. The regulations the Parents cite as support say no such thing.

In any event, the Court recognizes that it might be a misuse of a draft IEP for a school to force it on parents who had not participated in devising it. Yet that is not what happened here. What happened is that the public school created an IEP in May 1993, the Parents rejected it, and two years later the Parents and the School Defendants met in a hearing where they debated in large part what Matt's then-current needs were. The two years between when Matt started in the private school and the hearing saw more evaluations of Matt, experiences with him, rumination on both sides, and litigation preparation. The School Defendants presented the draft IEP to the hearing officer to show her what they thought Matt needed—based on all the information by then available to them. Even so, the hearing officer did not adopt the draft IEP wholesale. She approved of some of it, *see, e.g.,* A.R. 165, disapproved of some of it, *id.,* and ordered the School Defendants to prepare an IEP consistent with her findings, *id.* at 170. The draft IEP did not become Matt's actual IEP. As such, the Parents' claim that the draft IEP prejudiced Matt seems exaggerated. *See Roland M.,* 910 F.2d at 988 ("The court's focus in on the education program which finally emerges from the administrative review process, not the IEP as originally proposed.").

Moreover, the Court cannot imagine what would have prevented the School Defendants from merely relabeling and slightly repackaging the information contained in the draft IEP and thereby skirting the objection the Parents now raise. The Court concludes that the draft IEP was merely a legitimate form of evidence for the hearing officer to consider in devising her orders. The Court will not deem the hearing officer's consideration of the draft IEP an error that seriously undermined the integrity of the hearing.

The Parents tersely argue that the School Defendants failed to prepare a 1994–95 IEP for Matt, which they allege violated the IDEA's "stay-put" provision. The Parents do not provide a legal or factual basis for this argument, and the Court will not develop such bases for them.

Finally, the Parents assert that the administrative appeals board merely rubber-stamped the hearing officer. Granted, the board's opinion is cursory. However, the oral argument transcript and opinion indicate that the board considered each and every issue the Parents raised—all thirty-four of them. Perhaps the Parents' counsel invited a cursory review by raising thirty-four separate errors, barely touching on many. A.R. 35–41; *see Reed–Union Corp. v. Turtle–Wax, Inc.,* 77 F.3d 909, 911 (7th Cir.1996) (noting that a party who briefed twenty-one separate contentions on appeal thereby "ensure[d] that each [was] superficially argued"). Also, under Indiana regulations the appeals board applies a deferential standard of review, looking for "arbitrary and capricious" decision-making, "abuse[s] of discretion," and lack of support "by substantial evidence." 511 IAC 7–15–5(k)(4) & 6(k). Although the Parents tersely offer that this deferential standard violates the IDEA, they have not explained how. Again, fleshing out the parties' arguments is not the Court's job.

The Parents also cite comments that appeals board members made in oral argument which the Parents believe show the board was biased and out of touch with the issues. Aside from counsel's tendency to quote a bit out of context, the way the board may have viewed the issues and tested lawyer's theories during oral argument does not constitute its final ruling nor necessarily undermine that ruling. Also, once again, the board was dealing with a kitchen-sink array of objections raised by the Parents.

Despite some genuine concerns, the Court's overall conclusion is that the School Defendants did not violate the IDEA. Much of the difficulty here could have been avoided if the School Defendants had made a more clear case below, and if the hearing officer

and appeals board had better explained their rationales. In any event, the Court believes that the seeming ambiguities and omissions that the Parents try to exploit do not signal real error. The Court concludes that the School Defendants and the hearing officer substantially complied with the procedural requirements of the IDEA and delivered services to Matt that were "reasonably calculated to enable [him] to receive educational benefits." *Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051.

It bears repeating that the hearing officer concluded that Matt's "behaviors are a result of a complex interplay of his emotional handicaps, medication levels and compliance, learning disabilities and attention deficits, as well as such factors not peculiar to his disabilities such as effort, interest, personal preferences, fatigue, and motivation." A.R. 163. The Parents have not shown it more likely than not that this conclusion is wrong, nor that the School Defendants and hearing officer reacted inadequately in light of this conclusion.

For the foregoing reasons, the Parents' Renewed Motion for Summary Judgment is **DENIED.**

The School Defendants filed their own summary judgment motion, attacking the merits of the Parents' IDEA claim. Because the Parents bear the burden of proof on their IDEA claim and have not met that burden, the Court **GRANTS** the School Defendants' summary judgment against the Parents on their IDEA claim.

Both the School Defendants and the State Defendants have moved for summary judgment or dismissal against the Parents' Rehabilitation Act and section 1983 claims. However, the Court will not address those motions head on.

After the dispositive motions in this case were filed, the Seventh Circuit decided *George L.* In that case as here, the parents had pressed claims under the IDEA, the Rehabilitation Act, and section 1983. *Monticello School Dist. No. 25 v. Ill. State Bd. of Educ.*, 910 F.Supp. 446 (C.D.Ill.1995). The district court determined that the parents had failed to prove their IDEA claim. *Id.*

It then concluded that because the IDEA claim failed, the Rehabilitation Act and section 1983 claims necessarily failed as well. *Id.* at 449–50. On appeal, the Seventh Circuit approved the district court's approach. *George L.*, 102 F.3d at 903–04.

Like the *George L.* district court, this Court has determined that the Parents' IDEA claim fails. Accordingly, this Court might now take the route of the district court in *George L.* and grant summary judgment against the Parents on their Rehabilitation Act and section 1983 claims against all Defendants. However, the Court believes that the fairest approach is to allow the Parents a chance to distinguish their case from *George L.*

The Parents are **ORDERED** to file a brief on the sole issue of whether the remainder of their claims should be denied under *George L.* If the Parents concede that their remaining claims must be denied, they should inform the Court. If they believe their claims should not be denied, they must explain why. In explaining why, they must at a minimum show why the present record supplies a basis for them to prevail upon the remaining claims, or show that they have other evidence that gives them a nonfrivolous basis for prevailing on those claims. As for any other evidence, the Court directs the Parents to consider the Seventh Circuit's suggestion in *George L.* that further evidence on Matt's performance at the private school would seem unlikely to help the Parents prevail under the Rehabilitation Act or section 1983. *George L.*, 102 F.3d at 903–04.

The Parents shall have fifteen days from the date of this order to file and serve their brief. The School Defendants shall have ten days from being served with the Parents' brief to file and serve a response brief. The State Defendants may also file a response brief under the same deadline, but they are not required to do so. There shall be no further briefing except by leave of court. All briefs shall be double-spaced and shall not exceed fifteen pages in length.

The Court is aware that the State Defendants have moved against the School Defendants' crossclaim. The Court will address that motion in a later, separate order.

## CONCLUSION

For the foregoing reasons, the Renewed Motion for Summary Judgment is **DENIED,** and the School Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT IN PART.**