**A.S., Dick Shafer and Nancy Webb, Plaintiffs,**

v.

**MADISON METROPOLITAN SCHOOL DISTRICT, Defendant.**

No. 06–C–683–S.

United States District Court, W.D. Wisconsin.

March 13, 2007.

ities Education Act (IDEA). Defendant removed the action to this Court.

On February 1, 2007 defendant moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, submitting proposed findings of facts, conclusions of law, affidavits and briefs in support thereof. This motion has been fully briefed and is ready for decision.

On a motion for summary judgment the question is whether any genuine issue of material fact remains following the submission by both parties of affidavits and other supporting materials and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein. An adverse party may not rest upon the mere allegations or denials of the pleadings but the response must set forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party that a jury could return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiffs failed to follow this Court's *Procedure to be Followed on Motions for Summary Judgment.* In opposition to defendant's proposed findings of fact plaintiffs do not cite to record evidence but merely state that they dispute the fact. Further, the Procedure provides that where plaintiffs ask the Court to consider other factual propositions they must pre-

Joanne Harmon Curry, Lathrop & Clark, LLP, Madison, WI, for Defendant.

## MEMORANDUM and ORDER

SHABAZ, District Judge.

Plaintiffs A.S. and his parents Dick Shafer and Nancy Webb, commenced this civil action in Dane County Circuit Court against the Madison Metropolitan School District under the Individuals with Disabil-

pare their own statement of facts with record citations. Plaintiffs have failed to follow this procedure and have only included facts in their brief. Although plaintiffs have failed to follow these Procedures, nonetheless, the Court has considered the entire record to determine the undisputed facts.

 Plaintiffs have also submitted additional evidence that was not considered by the hearing officer. A district court is not required to consider evidence proffered by a party in an IDEA proceeding. The determination whether to allow additional evidence under § 1415(i)(2) is left to the discretion of the trial court. *Sch. Dist. of Wis. Dells v. Z.S.*, 184 F. Supp 2d 860, 862 (W.D.Wis.2001), *aff'd,* 295 F.3d 671 (7th Cir.2002). Much of the evidence that plaintiffs seek to introduce is evidence which is not relevant to the situation at the time the District created the IEP for A.S. in the summer of 2005. Specifically, plaintiffs seek to introduce an October 16, 2006 report of Dr. James Vincent and a January 4, 2007 report of Dr. Jerold Stewart. These reports will not be considered because they are not relevant to the time period involved in this case. The Court will consider only additional evidence that is relevant to the situation at the time the District created the IEP for A.S. that is at issue in this case.

### FACTS

For purposes of deciding defendant's motion for summary judgment the Court finds that there is no genuine dispute as to the following material facts.

Plaintiffs Dick Shafer and Nancy Webb, as legal guardians of A.S., (the parents) reside at 1710 Adams Street, Madison, Wisconsin. Defendant Madison Metropolitan School District (the District) is a Wisconsin public school district organized pursuant to the Wisconsin Statutes with its district office at 545 West Dayton, Street, Madison, Wisconsin.

A.S. was born on June 29, 1988 and was enrolled in special education in the 1992–1993 school year. He remains eligible for special education services under the IDEA.

A.S. received educational benefits from a highly-individualized special education program in regular education classes in his neighborhood school in California from March 1998–2003. He had a specific Communication Technology Assistant and received related services in addition to the regular school day. The IEP included appropriate goals, concrete measurable objectives and effective evaluation procedures. The IEP provided A.S. educational benefits in the least restrictive environment.

During the 2003–2004 school year A.S. and his parents resided in Sebastopol, California in the West Sonoma County Union High School District and A.S. attended Analy High School. A.S. was becoming more aggressive at home and had three aggressive incidents at school.

Ms. Kathryn Davy is the Special Education Director at the California School District. On May 5, 2004 the California School District submitted an offer of placement for A.S. for extended school year (ESY) 2004. The School District disagreed with the parents regarding the appropriateness of placing him at Camp Huntington, a residential placement, for his ESY program. Because the parents disagreed with the IEP team members' assessment of A.S.'s progress and believed that A.S. needed an intensive residential summer program, they enrolled A.S. in Camp Huntington.

An IEP meeting for A.S. was conducted on June 25, 2004 with Carlo Rossi facilitating the meeting. The parties were not

successful in resolving their dispute over the ESY placement and other issues.

On July 8, 2004 the parents were informed that the District had requested mediation and/or a hearing from the Special Education Hearing Office. On August 6.2004 the District agreed to reimburse parents for educational expenses at the Stewart Home School from September 1, 2004 through July 31, 2005. On September 18, 2004 the parents notified the District that A.S. was not successful at the Stewart Home School and had been dismissed.

A California School District school psychologist, Vince Hamilton, performed a cognitive assessment of A.S. He stated that he believed full inclusion (attendance in regular education classes) would be appropriate for the student and that it be a part of his program.

The parents commissioned an independent educational evaluation of A.S. by Dr. Carina Grandison, the Director of the Neuropsychology Assessment Service at Children's Hospital in Oakland California. She spent four hours interacting with A.S. and his mother and concluded that he needed an educational/therapeutic residential placement.

The parents placed A.S. in the Heartspring School in November 2004. On November 10, 2004 the parents filed a due process hearing request relating to the Heartspring School placement. On April 5, 2005 the parents entered into a settlement agreement with the California School District. The purpose of this agreement was to settle fully the differences between the parents and the California School District for the entirety of the 2004–2005 school year. The California School District agreed to pay $85,000.00 for educational expenses for A.S. at Heartspring School.

A Lanterman Act Fair Hearing concerning A.S. was conducted by the Office of the Administrative Hearings (OAH) for the State of California. The two issues were whether the North Bay Regional Center should be required to pay the cost of the residential portion of A.S.'s placement at Heartspring School and whether the Center should be required to pay the parents the cost of home services provided A.S. in September, October and November 2004. On December 23, 2005 the OAH issued its decision finding that the North Bay Regional Center was not required to pay for these services. In her decision Administrative Law Judge Cheryl R. Tompkin said as follows, "In addition, as a result of the mediated settlement between claimant and the school district, the goals and objectives from Heartspring were incorporated into claimant district's IEP, which effectively required residential placement at Heartspring as part of his educational process."

On April 24, 2005 Mr. Shafer wrote the Madison Metropolitan School District (the District) and indicated that A.S. had moved into the West High School area and would attend the Madison, Wisconsin school as soon as they had an IEP that met his needs. With his correspondence Mr. Shafer included the Madison School District enrollment form for A.S., Dr. Grandison's report of developmental neuropsychological assessment, California School District IEP documents from October 5 and 22, 2004, the Heartspring IEP conference report dated January 14, 2005, the student support plan dated March 1, 2005 and a settlement agreement dated April 5, 2005.

The Madison School District convened an IEP team's initial evaluation meeting on June 2, 2005. After reviewing the information that Mr. Shafer had provided the team concluded that A.S. met the eligibility criteria for autism and speech and language impairment. Mr. Harper was

the chairperson of the IEP team for A.S. Members of the team were LEA (Local Education Agency) representative Ted Szalkowski; Regular Education Teacher Mary Winter; Speech and Language Clinician Susan Knack; PST–Special Ed. Patricia Weynand; Psychologist Dr. Katherine Halley; PST–Special Ed., Susan Voltz Nett; Assistant West High School Principal Mary Thompson and the parents.

On June 9, 2005 Mr. Harper spoke with Shondra Hayes, principal; Kim Thomas, special education teacher; Lindsay Randall, speech and language teacher and Dr. Wayne Piersel at the Heartspring School. Mr. Harper also reviewed the psychological and educational evaluation of A.S. conducted by Vince Hamilton from the California School District. Mr. Harper also spoke with Kathryn Davy who had worked with A.S. in the California School District.

A second IEP meeting was conducted on June 10, 2005. In preparation for the meeting Mr. Harper drafted an IEP for the team's consideration. He also spoke with Heartspring personnel. The IEP included a primary placement of A.S. at West High School in Madison with five hours per day five days a week of specialized services in a special education setting and two hours per day five days a week of instruction in the regular education setting with a behavior intervention plan.

Included in the IEP were the goals of on-the-job training, supervised independent living and independent living with a course of study that focused on vocational preparation and independent living. The IEP also provided two hours a month for monthly programming team meetings.

Mr. Shafer objected that no representative of Heartspring School was present at this meeting even though he had been provided an opportunity to invite them.

Another IEP meeting was held on June 23, 2005. The team discussed A.S.'s eligibility for extended school year and concluded that the District would provide ESY during the summer of 2005. The IEP designated the ESY services to begin June 30, 2005 when the California School District settlement agreement ended.

On June 27, 2005 Mr. Shafer received a completed written IEP that consisted of ESY and school year services and an offer of placement. The offer consisted of a proposed 3.5 hours per week of ESY plus a standard school calendar with some additional dates of ESY. The IEP team concluded that there was no need for one-on-one individual support for A.S. from the school district after his school day ended.

The parents did not sign their consent for initial placement in the School District's program. They requested verbally that the District amend the IEP to continue A.S.'s placement at Heartspring until another appropriate placement was found. On June 28, 2005 the parents wrote the District stating that they were refusing the proposed IEP. The parents included a contract with Heartspring School for services from July 1, 2005 through June 30, 2006 for an estimated monthly cost of $21,220.00 of which $10,000.00 was for basic special education and $11,220.00 was for basic residential care. The parents notified the District that they intended to re-enroll A.S. at Heartspring School and to seek reimbursement from the District.

On July 22, 2005 Mr. Szalkowski sent Mr. Shafer a letter in response to the parent's criticism of the IEP process, in particular, the assessment process and the placement of A.S. at West High School.

On August 30, 2005 the District convened another IEP team meeting for A.S. and offered him an educational program and placement in the District. Modifications were made to IEP including provisions for assessments to be performed by

District staff when A.S. arrived in Madison.

On September 12, 2005 Mr. Harper sent the parents and A.S. notice of the District's refusal of their request for a therapeutic placement at Heartspring School in Wichita, Kansas. A.S. remained at Heartspring School during the 2005–2006 school year and continued to reside there as of the date of the due process hearing. The parents filed a stay-put request and a request for a due process hearing on June 8, 2006.

In the spring of 2006 the parents retained the services of Wendy Handrich, M.S. Ed., as a consultant to work with them and the District to further the District's understanding of Ariel's needs. She traveled to Wichita, Kansas to observe A.S. on March 14 and 15, 2006. She prepared a report recommending a transition team and home services.

The parents also hired Dr. James Vincent as a consultant. He observed A.S., conducted interviews and observations at West High School and performed a number of cognitive tests. He then made a report and recommendation. He noted that Heartspring School appeared to be a very appropriate setting for him due to high staff to student ratio, the interdisciplinary approach and the ability to provide consistency across settings. Neither Handrich or Vincent were called as experts by plaintiffs at the subsequent administrative hearing.

On June 29, 2006 the Administrative Law Judge Jeffrey D. Boldt from the Wisconsin Division of Hearings and Appeals (Division) dismissed the parents' allegation that they had been denied an opportunity to participate in the development of A.S.'s IEP. The ALJ denied the defendant's motion to dismiss the plaintiff's other procedural claims.

The Division bifurcated the case for hearing. On July 11 and 12, 2006 the Division held an evidentiary hearing on the parent's request for a "Stay-put" placement during the pendency of the hearing which the District opposed. Dr. Jack Jorgenson, the Executive Director for the Department of Educational Services for the Madison Metropolitan School District, testified that in his own professional opinion that the stay put placement for A.S. was in the Madison School District.

On August 2, 2006 ALJ Boldt issued a Ruling and Order on the Stay-put issue denying the parents' request. Specifically the ALJ found that the Parents' Settlement Agreement with the California School District did not establish the Heartspring School as A.S.'s "then-current educational placement" but was a compromise limited in both scope and duration and that the settlement was not binding on the Madison School District. The ALJ also found that the District had followed all appropriate Federal and State law and guidance in treating A.S. as applying for initial placement in the District and that the "stay-put" placement for A.S. was at Madison West High School unless the parents choose to bear the costs of the private residential placement at Heartspring School.

On August 7–11 and August 14, 2006 the ALJ conducted a hearing on the remaining issues. Mr. Harper, Mr. Szalkowski and Ms. Thompson, members of the IEP committee, testified that in their expert opinion the District's IEP provided A.S. with an IEP that is reasonably calculated to result in an education benefit in the least restrictive environment. Dr. Kathryn Halley testified that Madison West High School could properly manage A.S.'s behavior.

Dr. Jorgenson testified that the goals and objectives of the IEP for A.S. conformed to the requirements of the IDEA and state law. He also testified that A.S.

can receive educational benefit without additional services beyond the school day. Dr. Jorgenson explained that although the IDEA does not require the District to establish a reintegration plan, the IEP team would work with Heartspring School and the parents to develop a reintegration plan when the placement had been finalized. There was also testimony at the hearing that A.S. would qualify for support services from both the Community Ties Program and Dane County.

At the hearing Dr. Piersel from the Heartspring School testified that the least restrictive environment where A.S. could have gained educational benefit in 2005 was one in which there was the presence of two to three staff at a minimum during the school day. He also testified that A.S. required the presence of an additional two persons in the home beyond the parents. Dr. Piersel opined that A.S. need not be in a residential setting if there were sufficient staff to address his behavior.

After the parties submitted post-hearing briefs, the ALJ entered a final decision on September 26, 2006 finding that the District's IEP and placement offer for the 2005–2006 school year were appropriate and reasonably calculated to provide A.S. with educational benefit.

The ALJ specifically found that the District did not err in failing to include the Heartspring teacher in the IEP meeting nor in determining that no further evaluations were necessary. The ALJ also found that the District provided a timely IEP and adequately provided for transitional services as part of the IEP. Although the requirements regarding a reintegration plan were not binding on the District because Heartspring was not a Wisconsin residential care facility, the ALJ ordered the District to draft a reintegration plan in consultation with the parents and the staff of Heartspring after A.S. accepts the District's IEP.

In conclusion the ALJ found that since the parents did not provide their consent to the District's initial provision of services the District had no opportunity to remedy any failure to provide A.S. a FAPE prior to the student's enrollment in private school. Accordingly, the ALJ denied the plaintiffs' request for reimbursement.

On November 10, 2006 A.S. filed a complaint in Dane County Circuit Court seeking a review of the Division's orders. He claimed as follows: 1) the District did not incorporate A.S.'s then-current special education teacher in the IEP meeting; 2) the District predetermined A.S.'s placement; 3)the District did not comply with the statutory time limits set forth to generate FAPE and IEP document and did not provide timely notice to the requested educational program; 4) the transition plan in the School District's IEP is deficient; 5) the IEP is not reasonably calculated to enable A.S. to receive educational benefit and 6) the District did not provide prior written notice to the parents. The parents sought reimbursement of their expenses related to A.S.'s education at HeartSpring from June 30, 2005 to the present, a stay put order for the pendency of the dispute and reasonable attorney fees and costs.

On November 20, 2006 the District removed the case to this Court.

## MEMORANDUM

### STANDARD OF REVIEW

█ Plaintiffs bring this action under the IDEA which provides that children with disabilities are entitled to a free appropriate public education. 20 U.S.C. § 1400(d). A district court must independently determine whether the requirements of the Act have been satisfied. *Patricia P. v. Board of Educ. of Oak Park,* 203 F.3d 462 (7th Cir.2000). The Court

must give the hearing officer's findings of fact due weight. *Id.*

■ "Due weight" implies some sort of deference to the decisions of state hearing officers. *Board of Educ. of Murphysboro v. Illinois Bd. of Educ.,* 41 F.3d 1162, 1167 (7th Cir.1994). Courts should not substitute their own notions of sound educational policy for those of the school authorities they review. *Id.* This standard of review is described as somewhere between the deferential and the de novo. *Roy and Anne A. v. Valparaiso Cmty. Sch.,* 951 F.Supp. 1370, 1373 (N.D.Ind.1997).

■ "Due weight" varies from case to case. Because district courts are permitted to allow additional evidence when reviewing IDEA cases, the deference that is owed to the hearing officer depends on the significance of the additional evidence that the Court hears. *See Alex R. v. Forrestville Valley Community Unit Sch. Dist.,* 375 F.3d 603, 611–612 (7th Cir.2004).

## REQUEST FOR STAY PUT ORDER

■ Plaintiffs request the Court to issue a "stay-put" order for the pendency of the dispute. The law provides as follows:

> During the pendency of any proceeding conducted pursuant to this section unless the State or local education agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child ... Or, if applying for initial admission to a public school shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

The Division denied the parents request for a "stay-put" order finding that Heartspring School was not A.S.'s "then-current educational placement". The Division found that Madison West High School was the "then-current educational placement" for A.S.

A.S. was placed at the Heartspring School pursuant to a settlement agreement between the parents and the California School District with that district paying the tuition. The Madison School District was a not a party to this agreement and is therefore not bound by it.

In April 2005 the parents of A.S. sought to enroll A.S. in Madison public school district. According to the IDEA the receiving school district may conduct an initial evaluation to determine the student's eligibility and to develop its own IEP and placement for the student without any obligation to provide a FAPE according to the child's prior IEP. 20 U.S.C. § 1414(d)(2)(C)(i)(II). While this process is being completed the student with the consent of the parents shall be placed in public school. 20 U.S.C. § 1415(j). In the alternative the parents are free to voluntarily enroll their child elsewhere at their own expense.

Plaintiffs argue that the Wisconsin ALJ in the IDEA hearing should have given due regard to the decision of the California ALJ in a hearing which was not an IDEA hearing. In that decision, the California ALJ found that The North Bay Regional Center was not required to pay for residential services. The California ALJ indicated that Heartspring School was the IEP placement of A.S. This dicta is not binding on either the Division or this Court.

The ALJ in Wisconsin found that pursuant to the IDEA, the "then-current educational placement" of A.S. was Madison West High School's regular education program until an IEP could be implemented for him. The Court agrees with this decision. The ALJ's decision denying the parent's request for s "stay-put" order at Heartspring School will be affirmed.

## PLAINTIFFS' REIMBURSEMENT REQUEST

■ The parents are seeking reimbursement for the costs of A.S.'s attendance at Heartspring School from July 1, 2005 to June 8, 2006. The parents are eligible for reimbursement if they prove 1) the District's IEP violated the IDEA and 2) the private school placement was proper under the IDEA. *Florence Co. Sch. Dist. Four v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

■ An IEP does not violate the IDEA if the procedures set forth in the IDEA are followed and the IEP enables the child to receive educational benefits. *Board of Educ. Of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 206–207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The Court first addresses plaintiff's procedural claims.

## PROCEDURAL CLAIMS

■ Plaintiffs pursue procedural claims against the District. They claim the District failed to incorporate A.S.'s special education teacher in its IEP meeting, failed to conduct additional assessments, failed to comply with statutory time limits, failed to properly include a transition plan in the IEP and failed to provide prior notice to the parents.

Plaintiffs claim that the District had a statutory duty to include Heartspring School IEP team members in the development of the IEP for A.S. The IDEA requires only that at least one special education teacher or where appropriate at least one special education provider of the student. 20 U.S.C. § 1414(d)(1)(B). A special education teacher was a member of the IEP team. Further, Mr. Harper had talked to the teachers at Heartspring School prior to the June 10, 2005 meeting. Harper also subsequently talked to Dr. Piersel and Kathryn Davy at Mr. Shafer's request. The District did not violate plaintiffs' rights under the IDEA when no Heartspring School personnel were actually at the IEP meetings after plaintiffs had been provided the opportunity to invite them.

Plaintiffs claim defendant failed to assess A.S. and predetermined his placement. It is undisputed that the IEP team reviewed the parents' submissions regarding A.S. needs and his program at Heartspring school including Dr. Grandison's report of developmental neuropsychological assessment, California School District IEP documents from October 5 and 22, 2004, the Heartspring IEP conference report dated January 14, 2005 and the student support plan dated March 1, 2005.

Mr. Harper, the chairperson of the IEP team, talked to Heartspring School staff and to Kathryn Davy who had worked with A.S. in California. In addition, the final IEP provided for assessments when A.S. arrived in Madison. The IEP team assessed A.S.'s needs and did not predetermine his placement.

Plaintiffs claim that the District failed to comply with the statutory time limits. This argument is without merit because the District offered plaintiff an IEP placement on June 27, 2005 within the statutory time limits.

Plaintiffs argue that the transition plan is deficient. The transition plans included measurable goals and course of study pursuant to 20 U.S.C. § 1414(d)(1)(A)(i)(VIII). The transition plan was not deficient.

Plaintiffs also argue they were not provided prior notice of the changes to the IEP. There is no evidence in the record to support this argument.

The Court will affirm the ALJ's ruling that the District complied with the procedures of the IDEA.

## EDUCATIONAL BENEFITS

The Court next addresses whether the IEP enabled A.S. to receive educational benefits. *Rowley*, 458 U.S. at 206–207, 102 S.Ct. 3034.

 Plaintiffs argue that the District and the ALJ did not apply the correct standard in determining his IEP and that the standard should be whether A.S. could receive a "meaningful educational benefit" from the IEP. Plaintiffs contend that the 1997 change in the IDEA provided this standard which embodied the policy of ensuring independent living and economic self sufficiency for individuals with disabilities. 20 U.S.C. § 1400(c)(1).

Plaintiffs' argument is not persuasive because the United States Court of Appeals for the Seventh Circuit has held after the 1997 IDEA amendment that the standard provided in *Rowley* continues to apply. *See Sch. Dist. Of Wis. Dells v. Z.S.*, 295 F.3d 671, 677 (7th Cir.2002); *Patricia P. v. Bd. of Education*, 203 F.3d 462, 467 (7th Cir.2000). The standard in this Circuit is whether the IEP is reasonably calculated to provide educational benefits to the student.

The IEP included a primary placement of A.S. at West High School in Madison with five hours per day five days a week of specialized services in a special education setting and two hours per day five days a week of instruction in the regular education setting with a behavior intervention plan. The IEP also included goals of on-the-job training, supervised independent living and independent living with a course of study that focused on vocational preparation and independent living. The IEP also provided 3.5 hours per week of extended school year services. The parents disagreed with this IEP because they believed A.S. needed a residential placement.

The issue is whether A.S. required the residential placement requested by his parents to receive educational benefit.

The IEP team found insufficient support for the need to place A.S. in a 24 hour a day residential facility in order to achieve educational benefit. The team concluded that the primary reason for the Heartspring School Placement was the parents' previous difficulty in managing his behavior at home.

The IEP team also concluded that there was no need for one-on-one individual support for A.S. from the school district after the school day ended. The team also provided for less extended school year services than had previously been provided.

 The parents argue that the District's extended school year offer was not reasonably calculated to provide A.S. educational benefit because A.S. would experience regression. Under the IDEA extended school year services are required whether the student will experience regression during an interruption of services and demonstrate limited recoupment of skills after services resume.

After a lengthy hearing and briefing of the issues the ALJ found that the parents had not demonstrated that the behavioral problems in the home are educationally related. The ALJ specifically stated, "The nexus between providing FAPE and the aggressive incidents has not been established." Accordingly, he found that a residential placement was not needed to provide A.S. educational benefit.

The ALJ also found that there would be no regression in the student A.S. as a result of the ESY services offered. Accordingly, he found that the ESY services offered were reasonably calculated to provide A.S. educational benefit.

After hearing the testimony of Dr. Kathryn Halley, Dr. Jack Jorgenson and Dr. Piersel the ALJ found that the FAPE offered A.S. was reasonably calculated to

result in educational benefit. The Court affirms that finding.

 Although the ALJ did not reach the second prong of the analysis, whether or not the placement at Heartspring was proper under the IDEA, the Court will address it in the alternative. To be proper the placement had to provide A.S. an education in the least restrictive environment.

There is an absence of credible evidence that A.S. will regress and lose skills from the time he leaves school until the time he returns in the morning. It is Dr. Jorgenson's opinion that A.S. can receive educational benefit without the additional services beyond the school day. A.S.'s placement at Heartspring School did not provide him an education in the least restrictive environment.

CONCLUSION

Defendant provided A.S. a free appropriate public education in the 2005–2006 school year. Plaintiffs are not entitled to reimbursement for their costs for placing A.S. at the Heart Spring School for the 2005–2006 school year.

ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of defendant and against plaintiff AFFIRMING the decision of the ALJ denying the plaintiffs' request for a "stay put" order, finding that the District offered A.S. a FAPE in the least restrictive environment which was reasonably calculated to provide educational benefit, denying the parents' request for reimbursement for the costs of A.S. attendance at Heartspring School from June 30, 2005 to June 6, 2008 and ordering the District to draft a reintegration plan after A.S. accepts the IEP.